Pearsox C. J.
 

 We agree with Mr. Moore that “rent service” passes with the reversion as incident thereto, and that a purchaser, devisee or heir, taking a reversion after a life estate or a term of years becomes entitled to the rent which afterwards accrues.
 

 We also concur in the position that when a reversion is by will directed to be sold, and the price divided among several, as in our case, the purchaser of the,reversion would be entitled to the rent. This fact would increase the amount for which the revesion would sell, and add that amount to the fund for division; so, the devisees, to whom the fund is given, would get the rent, and the case does not differ from one where there is a.'direct devise of the reversion; indeed the devisees, when an actual partition could be made without prejudice, would be allowed an election to take the land instead of the money.
 

 We also agree that “rent service” need not be payable in money, but may be payable as well in grain, or beef cattle or the like. In the one case it is called “black rent,” in
 
 *308
 
 the other “white rent,” that is “silver rent.” We agree also that “black rent” need not be a certain amount of grain, &c. but the amount may be left for the time uncertain, to be fixed by the crop which the tenant actually makes, as one-fourth, or one-third, which the tenant is to render or deliver to the landlord as rent.
 

 But we do not concur in the position that the legal effect of the contract entered into by Wilkins and Parker was to establish the relation ot landlord and tenant, so as to make the part of the crop, to which -Wilkins was entitled, “rent service,” which would follow the reversion as an incident thereto.
 

 On the contrary,.it is merely an arrangement made by Mr. Wilkins to enable him the more conveniently to
 
 carry on Ms farm,
 
 after his slaves were set free. If he had, besides furnishing the horses mules and other things, also agreed to furnish the hands and let Parker have a part of the crop for his services as overseer, the idea of “rent service” would never have suggested itself, and we are unable to see how the circumstance that Parker agreed to furnish the hands can at all vary the case. In the latter case as in the former, the value of the things furnished by Wilkins, in addition to the use of the land, are so blended that the relative value of each cannot be estimated by any data furnished by the articles of agreement, and there is no amount either certain or which can be made certain, to be rendered as a return for the use of the land, which is necessary in order to constitute “rent service”; nor is Wilkins’ half of the fatted hogs, nor his half of the crops, to be rendered and delivered by Parker to Wilkins, — but the hogs and the crops are to be equally divided by them, share and share alike, thus making a sort of agricultural partnership, which is to continue for two years, and-which does not constitute the relation of landlord and tenant; although Parker, by furnishing the hands and agree
 
 *309
 
 ing to pay a part of the expenses of the farm, placed himself upon somewhat higher ground than a mere “cropper,” and was to have the exclusive direction and control of the farming operations.
 

 We therefore declare our opinion to be that the crop raised on “the Meadows” in 1867 does not belong to the plaintiffs as devisees, but, that it passes to the defendant under the bequest, viz : I wish the crop, stock and farming utensils, and all other perishable and personal property on said farm, &c\, to belong to my n.ephew E. W. Wilkins. If the testator had furnished the hands besides . the other things, and paid the overseer himself, the defendant would have been entitled to the whole crop. As it is, he only gets the onahalf of the crop, because’the testator had adopted a different-mode of carrying, on his farm, whereby he was only to have half of the crop, and his partner, Parker, was to have the other half.
 

 Although the articles of agreement between Wilkins and Parker presented no serious difficulty as to its construction, we.have discussed it somewhat fully because we are aware that, in the present condition of the country, contracts to carry on farming operations in a way similar to this are very generally resorted to, and, to prevent litigation, it is Avell to point out wherein they are plainly distinguishable from “leases and terms for years.”
 

 There will be a decree in conformity to this opinion.
 

 Per Curiam.
 

 Decree accordingly.