FOLEY, Respondent, vs. THE SOUTHWESTERN LAND COMPANY and another, imp., Appellants.

*October 16 — November 4, 1896.*

*Landlord and tenant: Eviction: Growing crops: Damages.*

1. An agreement between plaintiff and the defendant land company providing that the former should work a certain farm during the year 1890, and that an agreed portion of the crops raised, including hay, should go to the land company for rent of the farm and the balance to the plaintiff, created the technical relation of landlord and tenant between the parties.

2. The plaintiff having been wrongfully evicted and excluded from the farm by the defendants was entitled, by way of damages, to the fair market value of his agreed share of the crops upon the farm at the time they were taken from his possession, and the defendants were not entitled to offset the cost of harvesting the land company's portion thereof in mitigation of damages.

3. The damages awarded by the jury in such a case being less than that shown by the plaintiff's evidence, and the trial court having refused to set the verdict aside on the ground that the damages were excessive, this court cannot interfere.

APPEAL from a judgment of the circuit court for Chippewa county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

This is an action of trespass for breaking and entering the plaintiff's close, describing it, situated in Eau Claire county, on the 10th day of July, 1890, and on divers other days, etc., and then and there, with scythes, mowers, and reapers, etc., unlawfully cutting and carrying away grass, hay, and grain of the plaintiff then standing and growing thereon, namely, flax on two acres of land, potatoes on one and one-half acres, corn growing on twenty-two acres, rye on fourteen acres, oats on thirty-eight acres, hay on fifty-five acres, of the value of $1,300, and converting the same to their own use. Defendants interposed a general denial. At the trial it was admitted that the defendants took away and harvested whatever grew on the close or farm described

in the complaint, called the Hadley farm, and claimed by the plaintiff to have been rented of the defendant the *Southwestern Land Company*, through its agent, Worth. The crops were harvested by the defendant *Goff* under an arrangement made between him and the company, the defendant Ellis acting as an officer of the land company. Evidence was given to the effect that the plaintiff, under an agreement or lease, took possession of the premises in the spring of 1890, plowed the ground, sowed it, planted corn, potatoes, flax, and put in all the crops, furnishing the seed, and that he finished cultivating corn about the 8th or 9th of July; that the defendants Ellis and the *Southwestern Land Company* then let the place to *Goff*, who took possession of it and of the crops, and thereafter harvested them.

After considerable testimony for and on behalf of the plaintiff and the defendants as to the facts and circumstances and the value of the crops and damages, the case was submitted to the jury. The court, in its charge to the jury, submitted it to them to find whether it was agreed that the plaintiff should work the farm mentioned for the year 1890, and that a portion of the crop raised, including hay, should go to the defendant company for rent of the farm, and the balance to the plaintiff; and whether plaintiff, under such contract, entered into the possession of the farm in the spring of 1890, and worked it, to the knowledge of defendant Ellis and the agent, Worth, and without objection on their part, till some time in the summer, at which time half the crop was ready for harvest, and that then defendant *Goff*, acting under the directions of the defendant Ellis, an officer of the land company, entered upon the land and took the crops, without the plaintiff's consent. That, if they were not satisfied from a preponderance of the evidence that the farm was *leased* to the plaintiff, and that he entered upon the same and put in the crops under *such lease*, then they should find for the defendants; but that, if they were so satisfied from

the evidence, they "should then proceed to determine the fair market value, according to the preponderance of the evidence, of that part of the crops which the plaintiff was entitled to under the terms of the contract or lease, as such crops were situated, standing, or being on the farm at the time the same were taken from the plaintiff, under the directions of Ellis,— add thereto interest thereon from the time of such taking at the rate of six per cent. per annum up to the present time, and render a verdict for the plaintiff therefor." The jury found a general verdict in favor of the plaintiff in the sum of $714.37. The defendants moved for a new trial, which was denied. Plaintiff had judgment on the verdict for his damages and costs, from which the defendants *Goff* and the *Southwestern Land Company* appealed.

It was assigned as error: (1) That the court erred in denying the defendants' motion for a new trial, because the evidence failed to support the verdict, in that it showed that the parties were tenants in common of the crops, and the plaintiff therefore was not entitled to recover; (2) the court erred in its charge to the jury in regard to the measure of damages; (3) the damages awarded are excessive. Such other facts as are material are stated in the opinion.

For the appellants there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. They contended, *inter alia*, that a tenant who works land for a share of the crop, when entitled to recover at all from the landowner who has taken from him the crop before it is harvested, is entitled only to the value of the tenant's share when harvested, after deducting the cost of harvesting the whole crop or the value of the tenant's unharvested share, less the cost of harvesting the share of the landowner. *McClure v. Thorpe*, 68 Mich. 33; *Loomis v. O'Neal*, 73 id. 582; Suth. Dam. (2d ed.), §§ 164, 865; *Jones v. Horn*, 14 Am. St. Rep. 17, and cases cited; *Sprague v. Brown*, 40 Wis. 612; *Love-*

*joy v. Merchants' State Bank,* 5 N. Dak. 623, and cases cited; *Single v. Schneider,* 30 Wis. 570; 15 Am. & Eng. Ency. of Law, 688; *Allen v. Murray,* 87 Wis. 41, and cases cited.

For the respondent there was a brief by *Doolittle & Shoemaker* and *A. J. Sutherland,* and oral argument by *L. A. Doolittle.* They argued, among other things, that there is a distinction as to the measure of damages between a trespasser from the beginning or a wilful trespasser, and one who comes rightfully into possession, as under a valid execution or attachment, or is a trespasser through inadvertence or mistake. In cases of wilful trespass like the one at bar no allowance can be made for work done. *Stuart v. Phelps,* 39 Iowa, 14; *Foster v. Weaver,* 118 Pa. St. 42; *Ellis v. Wire,* 33 Ind. 127; *Everson v. Seller,* 105 id. 266, 271; *Salsbury v. McCoon,* 3 N. Y. 379; *Bull v. Griswold,* 19 Ill. 631; Suth. Dam. (2d ed.), §§ 1126–1128; *Fobes v. Shattuck,* 22 Barb. 568; *Burns v. Winchell,* 44 Hun, 261; *Attack v. Bramwell,* 3 Best & S. 520; *White v. Binstead,* 76 Eng. C. L. 303; *Gillard v. Brittan,* 8 Mees. & W. 575; *Hall v. Ray,* 40 Vt. 576; *Marlowe v. Rogers,* 102 Ala. 510; *Walther v. Wetmore,* 1 E. D. Smith, 7; *Newbold v. Wright,* 4 Rawle, 195; *Wehle v. Butler,* 61 N. Y. 245; *Wanamaker v. Bowes,* 36 Md. 42; *Edmondson v. Nuttall,* 17 C. B. (N. S.), 280; *Swire v. Leach,* 18 id. 479; *Livingstone v. Rawyards Coal Co.* 5 App. Cas. 33; *Wooden-ware Co. v. U. S.* 106 U. S. 432; *Whiting v. Adams,* 25 L. R. A. 598.

PINNEY, J. 1. This action was tried and submitted to the jury upon the theory that it was essential to the plaintiff's right to recover that the conventional relation of landlord and tenant existed between the plaintiff and the *Southwestern Land Company,* the owner of the premises, and that the plaintiff was, therefore, the owner of the crops, and not that the plaintiff was a cropper of its farm, rendering services

and performing work and labor for a certain share of the crops raised, as his compensation therefor, and under which arrangement the parties would be tenants in common of the crops. There was no request on the part of the defendants that the case should be submitted to the jury under the last-mentioned aspect, and it was submitted to them to find for the plaintiff if the relation of landlord and tenant existed between the parties, and, if not, to find for the defendants. There was no request on the part of the defendants that the court should instruct the jury as to what facts would render the plaintiff a cropper, and the parties tenants in common of the crops. It is not necessary to recapitulate the evidence. There was certainly sufficient evidence from which the jury might find, as they did, that the relation of landlord and tenant existed, under which the plaintiff would be bound to pay a specified part of the crops to his landlord by way of rent in kind for the use of the land. And it may be conceded that there was evidence from which the jury might have arrived at a contrary conclusion; but, as there was evidence sufficient to sustain the verdict, and no request was made to the court to submit any instructions as to what state of facts would have rendered the parties tenants in common of the crops, or for any more specific instructions than were given, the first assignment of error cannot be maintained. The distinction between an agreement of lease and the contract of a cropper was pointed out in *Strain v. Gardner*, 61 Wis. 174–184, where many of the authorities were cited, and the conclusion reached that an agreement quite the same as the one found by the jury in this case was "by the strong current of authority in every essential a lease," and the relation of the parties was that of landlord and tenant; and the court cites with approbation *Taylor v. Bradley*, 39 N. Y. 129; *Burns v. Cooper*, 31 Pa. St. 426; *Ream v. Harnish*, 45 Pa. St. 376; *Geer v. Fleming*, 110 Mass. 39; *Darling v. Kelly*, 113 Mass. 29; *Warner v. Abbey*, 112

Mass. 355; and many other cases sustaining that conclusion. The term in the present case was "during the year 1890," and the jury have found, in substance as submitted, that an "agreed portion of the crops raised, including hay, should go to the land company for rent of the farm, and the balance to the plaintiff," and they were instructed that, unless they found "that the farm was leased to the plaintiff, and he entered upon the same, and put it into crops under such lease," they should find for the defendants.

2. The instruction of the court on the question of damages was that the plaintiff was entitled to the fair market value of that part of the crops which the plaintiff was entitled to under the terms of the contract or lease, as such crops were situate, standing, or being on the farm at the time they were taken from the plaintiff under the direction of Ellis, adding thereto interest. It is contended that his damages did not exceed the value of the share of the crops which he was entitled to as the same stood at the time, less the expense of harvesting the defendants' share, for by the terms of the contract the plaintiff was to obtain his share only on condition that he should plant, cultivate, and harvest the whole crop, and he had performed and incurred only a part of such labor or expense; that his damages were not the same as if the labor and expense to be performed and incurred related only to his share at the time they were taken from him. The plaintiff was wrongfully evicted and excluded from possession of the farm by the lessor and those acting under it. They were trespassers, and their wrongful acts rendered it impossible for the plaintiff to further perform the contract or lease. Are the defendants to be allowed to profit by their own wrong, and defeat the plaintiff's right to compensation for the part of the crops that belonged to him, for that reason? Manifestly not. Such a contention cannot be allowed. Had the landlord sued the plaintiff for nonperformance of the contract of lease, the fact that by his

wrongful and unlawful acts he had prevented performance would have been an inevitable bar.  By what right, then, can it be claimed that upon the same ground he may have the plaintiff's damages for the unlawful taking of his part of the crops by the defendants diminished?  It is a rule of law that he who prevents a thing from being done shall not avail himself of the nonperformance which he has himself occasioned, as, "if a man has covenanted to build a house on the land of the covenantee, performance of the covenant is excused if the covenantee will not suffer the covenantor to come upon the land to build, as he cannot lawfully come there without the permission of the covenantee."  Addison, Cont. (Abbott's ed.), *1194.  The principle applies to the present case, where the plaintiff has been evicted and excluded from the demised premises by the landlord and those acting under him.  But for this, it is to be presumed that the plaintiff would have fully performed.  That he did not was the lessor's own act and fault, and therefore it was not damnified.  *West v. Blakeway*, 2 Man. & G. 750.  It is clearly not competent, under the circumstances stated, for the defendants to say, "We have performed your agreement for you, and your recovery for the consequences of our wrongful acts must be reduced accordingly."  *Attack v. Bramwell*, 3 Best & S. 520–525; *White v. Binstead*, 13 C. B. 307; *Fobes v. Shattuck*, 22 Barb. 568.  The plaintiff has, therefore, been rightly allowed for his part of the crops what the jury found they were worth at the time.  To this, at the very least, he was clearly entitled.

3. It was claimed that the damages allowed were excessive, but the contention cannot be sustained.  The evidence on this subject took quite a range.  The amount allowed is considerably less than that shown by the evidence on the part of the plaintiff, and much more than shown by the testimony of the defendants.  The question of damages was for the jury, and, as the trial court refused to set aside the

The Mills & Le Clair Lumber Co. vs. The Chicago, St. P., M. & O. R. Co.

verdict on the ground that the damages were excessive, this court cannot interfere. We do not find any reversible error in the case.

*By the Court.*— The judgment of the circuit court is affirmed.

MARSHALL, J., took no part.