## E. O. GARRETT V. REPUBLICAN PUBLISHING COMPANY ET AL.

### FILED MARCH 20, 1901. No. 9,384.

1. **Written Contract: CREATION OF PARTNERSHIP: INTENTION OF PARTIES.** Whether a written contract creates a partnership is to be determined by ascertaining the intention of the parties from their language.

2. **Partnership: ESTOPPEL: INTENTION.** Where no question of estoppel is involved persons can not be held to be partners despite their intention not to form that relation.

3. **Partnership Profits: PARTICIPATION: INTENTION.** The right of participation in the profits of a business indicates the existence of a partnership, but actual intention is the decisive test.

4. **Partnership Contract: RENT.** A contract, by the terms of which

the owner transfers to another the exclusive use and control of property and is to receive as rent therefor a portion of the profits arising from such use, is not a partnership contract.

ERROR from the district court for Custer county. Tried below before GRIMES, J. *Affirmed.*

*Taylor Flick,* for plaintiff in error.

*C. L. Gutterson, A. R. Humphrey* and *C. H. Holcomb, contra.*

SULLIVAN, J.

This was an action by E. O. Garrett to recover damages for an alleged libel printed April 30, 1896, in *The Custer County Republican,* a weekly newspaper published in the city of Broken Bow. The defendants, the Republican Publishing Company, a corporation, and J. H. Chapman, filed separate answers, the former denying and the latter admitting responsibility for the defamatory article. The court held that the evidence given at the trial was insufficient to warrant a verdict against the publishing company, and sustained a motion to dismiss the case so far as it was concerned. This is the only ruling of which the plaintiff complains.

It appears from the record that the newspaper in which the libelous article appeared was at the time under the control and direction of Chapman, whose rights and authority in the premises were derived from a contract with his co-defendant, the owner of the plant. Since the case turns upon the construction of this contract, its material provisions are here set out:

"This indenture, made this 1st day of October, 1895, between Republican Publishing Company of Broken Bow, Nebraska, party of the first part, and J. H. Chapman, party of the second part,

"Witnesseth, That the said party of the first part, in consideration of the covenants of the party of the second part, hereinafter set forth, do by these presents, lease to

the said party of the second part, the following described property, to-wit:

"All the complete publishing outfit belonging to said first party consisting of engine, presses, type, job printing outfit, and all appurtenances thereunto belonging, together with the subscription list and good-will of the Broken Bow Republican; to have and to hold the same to the said party of the second part from the 7th day of October, 1895, to the 1st day of November, 1896. And the said party of the second part, in consideration of the leasing of the premises as above set forth, covenants and agrees with the party of the first part to pay the said party of the first part, as rent for the same, —— dollars, as follows, to-wit: The said second party is to take full and complete charge of said publishing outfit, to edit and manage the paper in the best manner possible for best interest of all parties; to pay all expenses of every nature, in connection with the management of the same, including labor; to employ only such help as may be actually necessary for the best interest of the parties hereto in conducting such business, and to retain for his services the first $900.00 of the net profits derived from said business, and the next $200.00 to be paid to said first party, and all further profits to be divided one-third to said first party and two-thirds to said second party.

"The said party of the second part further covenants with the said party of the first part, that at the expiration of the time mentioned in this lease, peaceable possession of the said premises shall be given to the said party of the first part, in as good condition as they now are, the usual wear, inevitable accidents, and loss by fire excepted; and that upon the non-payment of the whole or any portion of the said rent at the time when the same is above promised to be paid, the said party of the first part may, at its election, either distrain for said rent due, or declare this lease at an end, and recover possession as if the same was held by forcible detainer; the said party of the second part hereby waiving any notice of such

election, or any demand for the possession of said premises.

"And it is further covenanted and agreed, between the parties aforesaid, that the subscription list and good-will of said newspaper plant is to at all times be and remain the property of said first party, and is to be returned to said first party at the expiration of this lease, and all prepaid subscriptions to be either offset by prepaid subscriptions at commencement of this lease or paid in cash by said second party in proportion to amount paid for year that time has run."

This agreement, the plaintiff contends, made the defendants partners and rendered the publishing company liable for the defamatory article published by Chapman. We think otherwise. Whether a contract creates a partnership depends upon the intention of the contracting parties. Where no question of estoppel is involved persons can not be held to be partners despite their intention not to form that relation. Sharing the profits of a business is not conclusive evidence of the existence of a partnership. *Whitney v. Gretna State Bank*, 50 Nebr., 438. This question was very fully considered in the case of *Waggoner v. First Nat. Bank of Creighton*, 43 Nebr., 84, where it is said by RAGAN, C., speaking for the court: "Community of interests in profits, not by way of compensation for services rendered or capital loaned, but profits as such, and community of interests in the property the subject of the venture, and community of power of management of such property are correct tests of copartnership." In Bates on Partnership (vol. 1, sec. 45) it is said that "an indefinite compensation out of profits for the use of property, real or personal, and dependent on the success of the business, is in lieu of rent and does not constitute the owner a partner *inter se*." The adjudged cases cited by the author fully sustain his conclusion. They establish beyond doubt the proposition that while the right of participation in profits indicates the existence of a partnership, actual intention is the

decisive test. Looking now at the contract quoted, it is quite evident that the parties did not intend to become partners in the publishing business. In the first place, it does not appear that the corporation had authority to form so incongruous a relation. 1 Morawetz, Private Corporations, 421; Angell & Ames, Corporations, sec. 272; 7 Am. & Eng. Ency. Law [2d ed.], 794. But if it had the power, its purpose not to take upon itself the obligations of a partner is manifest. The compensation which it was to receive for the use of its property was expressly declared to be rent; it had neither control of the business nor right of participation therein. It had no present right to even enter upon the premises where the business was conducted or to make any agreement that would be binding upon Chapman. The only warrantable inference from the evidence is that the defendants did not intend to become partners. The decision of the trial court is the result of a correct interpretation of the contract, and it is

AFFIRMED.

HOLCOMB, J., did not participate in the decision.