Wagner, Respondent, vs. Buttles, imp., Appellant.

*December 13, 1912—January 7, 1913.*

*Master and servant: Contract of hiring: Guaranty of payment: Lia-
bility, when terminated: New hiring: Partnership: Landlord
and tenant: Letting on shares: Construction of contract.*

1. Where the owner of a farm, to induce a farm hand to work for
   the tenant, engaged to see that his wages were paid, and such
   farm hand, having the option to terminate his contract of em-
   ployment at the end of any month, voluntarily quit work after
   a few months and was paid in full, his contract and the liabil-
   ity of the landlord upon the guaranty were thereby terminated;
   and the fact that he returned to work some eight months after-
   ward, at the request of the tenant and with the knowledge of
   the landlord, did not revive such liability.
2. The fact that nothing was said as to wages at the time of such
   return, while it might warrant a finding either that it was un-
   derstood and intended that the servant should receive the same
   wages as before or that he was to be paid *quantum meruit*,
   could not alter the fact that he then went to work under a new
   contract; and the landlord not having participated in the mak-
   ing of the new contract, no promise on his part to continue the
   guaranty could be implied.
3. A partnership was not created between the owner of a farm and
   one to whom he let the same on shares, although the contract
   contained provisions for the joint purchase and ownership of
   live stock for use on the farm, a sharing of certain other ex-
   penses, an advisory supervision of the farm work by the owner,
   and joint ownership of the produce of the farm until sale or
   division; especially where it was expressly stipulated in the
   contract that it should not be construed as constituting a part-
   nership and that neither party should have power to contract
   debts on behalf of the other.
4. To constitute one a partner in an enterprise he must share in
   the profits as such and not as compensation for services or for
   the use of the property.
5. Where a farm is let in consideration of a share of the crops,
   there is no division of profits as such, since the tenant's share
   may represent a loss to him and the landlord is not bound to
   make good any portion of said loss.
6. In construing a contract for working a farm on shares, the in-
   tention of the parties as to what their relations should be be-
   tween themselves should govern when possible.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

This action was brought to recover wages alleged to have been earned between June 16, 1908, and October 3, 1910, the balance sued for being $361. The defendant *Buttles* was the owner of a large farm, and on April 1, 1907, entered into a three-year contract or lease with his codefendant by which the latter agreed to work the farm on shares. The plaintiff was actually employed by the defendant Rand, but claimed that he entered the employment under an agreement on the part of the defendant *Buttles* to see that his wages were paid. The defendant Rand did not appear in the action. The case was submitted to the jury on a general verdict. The court instructed the jury that unless *Buttles* agreed to pay *Wagner's* wages before the latter entered upon his employment and *Wagner* relied on such promise and extended credit both to Rand and *Buttles,* there could be no recovery against *Buttles.* The court said:

"You must be satisfied upon this issue, by a fair preponderance of the evidence, that before *Mr. Wagner* entered into the service *Mr. Buttles* promised to pay or in effect see that his wages were paid for the work which he was performing on the farm. If you are satisfied by a fair preponderance of the evidence that *Mr. Buttles* did so promise, and he relied upon it and performed work in reliance upon that promise, then he is entitled to recover the amount asked for. If you are not so satisfied you should find for the defendant."

The jury returned a verdict for the plaintiff for the amount claimed; and from a judgment entered on such verdict the defendant appeals.

The cause was submitted for the appellant on the brief of *George H. Gordon,* and for the respondent on that of *A. E. Bleekman.*

BARNES, J. Prior to April 1, 1907, plaintiff worked for a tenant of the defendant *Buttles.* Rand was about to suc-

ceed such tenant on April 1st, and requested plaintiff to continue in his employ. Plaintiff testified that he declined the offer of employment until *Buttles* went to him and said: "You are acquainted with the stock on the place, and I want you to stay here if you will and I will see that everything is all right." .This is the only conversation that ever took place between plaintiff and *Buttles* in reference to employment. After it occurred, according to plaintiff's evidence, he went to Rand and made a contract of hire with him, by which Rand agreed to pay him $35 per month during the so-called eight summer months and $25 per month for the four winter months. This month-to-month contract of hire was terminated by the plaintiff on September 1, 1907, when he voluntarily quit work. His wages were paid in full by Rand. Some eight and one-half months thereafter Rand met the plaintiff and said to him: "We want you to come back there and work for us again." Pursuant to this request plaintiff returned on June 16, 1908. *Buttles* was not present when Rand requested plaintiff to return to work, and so far as the evidence disclosed he knew nothing whatever about the transaction which led to the second employment. Plaintiff continued to work until October 3, 1910, when Rand quit the farm owing him $361. Plaintiff never received any money from *Buttles* for his work and never made any demand on him for money until this action was commenced, although he knew that Rand and *Buttles* were settling up before Rand left the farm.

Either party had the right to terminate the original contract of employment at the end of any month. We can see no escape from the conclusion that the plaintiff effectually terminated it when he quit work October 1, 1907. If he commenced work under that contract on the strength of *Buttles's* promise, surely that promise ceased to have any force or effect when plaintiff quit work and was paid all that was due him under his contract of hire. If Rand and the plaint-

iff saw fit to enter into a new contract nearly nine months after the first one terminated, we are at a loss to see how *Buttles* can be held responsible to the plaintiff simply because he agreed to assume responsibility for the first contract. It is true that *Buttles* knew plaintiff had returned to work on the farm, but it is also true that under the lease or contract by which Rand went into possession of the farm he specifically agreed to pay all labor employed in working it. If one person agreed with a merchant to become responsible for a bill of goods furnished to another while he was performing a certain contract, it would hardly be contended that he thereby became liable for a second bill of goods furnished to the party while he was performing another contract subsequently made. The illustration is quite analogous to the situation in this case. It does not appear that anything was said about wages when plaintiff returned to work, but this does not alter the fact that he went to work under a new contract. The circumstances were such that a jury might be warranted in finding that the parties understood and intended that plaintiff was to receive the same wages which he had formerly been paid. If not, plaintiff could recover on *quantum meruit*. But in the absence of any participation by *Buttles* in the making of this second contract, we do not see how any promise on his part to continue his guaranty can be implied. We think the record is barren of any evidence to connect *Buttles* with this second contract. It appears from the evidence of the plaintiff that *Buttles* was anxious to have him continue his work because of his acquaintance with the stock, Rand being a new man on the farm. After Rand became familiar with conditions there was no apparent reason why *Buttles* should prefer plaintiff to any other employee.

Some slight evidence was offered on the trial tending to show that, as to the plaintiff, *Buttles* and Rand held themselves out as partners, and plaintiff argues that they are liable to him as such even though they were not partners *inter se*.

It is evident from the manner in which the court submitted the case to the jury that it considered the evidence wholly insufficient to sustain a finding that as to the plaintiff the defendants held themselves out as copartners. The jury was told that unless they found that before plaintiff entered the service *Buttles* promised to pay his wages they must return a verdict for the defendant. We think the circuit judge was correct in concluding that there was no evidence tending to show that the defendants held themselves out to the plaintiff as partners.

But one point remains to be considered. If the defendants were partners *inter se* the judgment is right, although recovery was not allowed on such ground. The agreement between the defendants falls within a class which the courts have found it difficult to classify. Reasons can be urged why the contract does not create the relation of landlord and tenant as that relation is defined by the common law. Reasons can also be urged to show that the relation of master and servant did not exist, and why the parties were not partners, and why the defendant Rand was not a cropper. Reasons can also be advanced in support of a contention that the contract created each and every of the relations above specified. The New York court has christened this class of agreements "special contracts" (*Taylor v. Bradley,* 39 N. Y. 129), and our own court and some others have said that they partake of the nature of "an adventure" which entitles the person taking the farm to participate in the profits derivable therefrom. *James v. James, ante,* p. 78, 137 N. W. 1094, and cases cited. Some courts hold that agreements of the kind here involved make the parties thereto copartners. *Lewis v. Wilkins,* 62 N. C. 303; *Thornton v. Barber,* 48 App. Div. 298, 62 N. Y. Supp. 527; *Leavitt v. Windsor L. & I. Co.* 54 Fed. 439; *Bank of Overton v. Thompson,* 118 Fed. 798. The North Carolina decision was not followed in the subsequent case of *Day v. Stevens,* 88 N. C. 83. Between the dates on which the

two cases· were decided a statute was passed which in part at least accounts for the change. Cases holding the contrary doctrine, decided by foreign jurisdictions, are: *Cedarberg v. Guernsey,* 12 S. Dak. 77, 80 N. W. 159; *Smith v. Schultz,* 89 Cal. 526, 26 Pac. 1087; *Brown v. Jaquette,* 94 Pa. St. 113; *Williams v. Rogers,* 110 Mich. 418, 68 N. W. 240; *Randall v. Ditch,* 123 Iowa, 582, 99 N. W. 190; *Blue v. Leathers,* 15 Ill. 31; *Shrum v. Simpson,* 155 Ind. 160, 57 N. E. 708; *State v. Saunders,* 52 S. C. 580, 30 S. E. 616; *Gurr v. Martin,* 73 Ga. 528; *Romero v. Dalton,* 2 Ariz. 210, 11 Pac. 863; and *Taylor v. Bradley,* 39 N. Y. 129. The terms of the contracts involved vary considerably in these cases. Perhaps the one coming nearest to the contract before us is that passed upon in the South Dakota case. However, the contracts are much alike in their main features. In each of them the landowner agrees to permit another to work his land and the landowner receives as compensation for the use of the land a part of the crops raised thereon, and the party working the farm receives the balance as compensation for his services.

Turning to the decisions in our own court: In *Strain v. Gardner,* 61 Wis. 174, 21 N. W. 35, it was held that a contract whereby Strain leased her farm to Gardner and was to be paid one third of the crops for its use created the relation of landlord and tenant. Substantially the same kind of an agreement was held to create the relation of landlord and tenant in *Foley v. Southwestern L. Co.* 94 Wis. 329, 68 N. W. 994.

In *Rowlands v. Voechting,* 115 Wis. 352, 91 N. W. 990, the contract was designated a lease, and it was stipulated therein that in lieu of rent the landowner should reserve one half of the income of the farm and the products raised thereon, including proceeds derived from the sale of milk, butter, eggs, etc., and that the tenant should render quarterly accounts of receipts and disbursements and furnish receipts showing the payment of disbursements, and that all expenses except farm

labor were to be borne equally by the parties. This contract was held to create the relation of landlord and tenant. In support of this conclusion it was pointed out that the words "lease, demise, and let" were used in the document; that the parties thereto were designated "lessor" and "lessee;" that with certain exceptions the premises were placed in the exclusive possession of the lessee for a definite term; that he had power to raise such crops as he pleased; and, finally, that the lessee was to discharge his rent not by rendering one half the crops *in specie* to the landlord, but by paying one half the income received by him from the sale of the produce of the farm.

The contract in the case before us is a much more elaborate affair than was the one involved in the *Rowlands Case.* The two instruments are similar in these particulars: The premises in each instance were "leased, demised, and let;" the parties were designated "lessor" and "lessee;" the leasing was for a definite term; certain expenses were to be borne equally by the parties; the lessees in each case were required to pay the farm labor employed; in each case the personal property leased was to be returned; each lessee agreed to pay road taxes, and each agreed to keep the buildings in a good state of repair.

The principal points of difference between the two leases are the following: In the present case the lessor reserved the right to erect additional buildings on the farm and the lessee agreed to haul the material therefor free of charge. Any additional live stock purchased for the farm was to be jointly paid for and jointly owned. In case it was necessary to buy any provender for the live stock, each agreed to pay one half the cost. Each agreed to pay one half the cost of threshing and corn shredding and of filling the silo, except the lessee was to pay the labor cost entering into these items. The lessor reserved the right to exercise a general supervision in the conduct and carrying on of the farm, by conferring and advising with the lessee. All the produce raised on the farm was to be

the joint property of the parties and could not be sold without the consent of the lessor. The money derived from the sale of said produce was to be divided equally. If at the termination of the lease the joint property was not disposed of, it was to be equally divided; and, finally, it was stipulated that the agreement should in no manner be construed as a copartnership between the parties, and that neither party should have any authority to contract any indebtedness for or on behalf of the other.

The real essential points of difference between the two leases are four in number. In the instant case there was (1) a provision for the joint purchase and ownership of live stock for use on the farm; (2) the produce raised thereon was to be the joint property of the parties and could not be disposed of without the consent of *Buttles;* (3) *Buttles* reserved the right to exercise a general supervision in the conduct and carrying on of the farm, by conferring and advising with Rand; and (4) the parties agreed that their contract should not be construed as constituting a copartnership, and that neither party could contract debts on behalf of the other.

This latter provision is significant, though not conclusive, in determining the relationship of the parties. *Spaulding v. Stubbings,* 86 Wis. 255, 56 N. W. 469. In so far as intention is important in determining the question, it is clear that the parties did not intend to form a copartnership.

The latest definition by this court of what constitutes a partnership is found in *Langley v. Sanborn,* 135 Wis. 178, 181, 114 N. W. 787, wherein it is said that wherever we have "a community of interest in the profits of the business *as profits,*" we have a copartnership. The court pertinently remarks that the definition is elusive and difficult of application, because wherever it appears that one should share in the profits of an enterprise as *compensation* for the services, property, or opportunity furnished by him in aid of the business, no partnership results. He must share in profits as such and not as

compensation for services or property, or the parties do not become partners. *Hoile v. York,* 27 Wis. 209; *Ford v. Smith,* 27 Wis. 261; *Nicholaus v. Thielges,* 50 Wis. 491, 7 N. W. 341; *Sohns v. Sloteman,* 85 Wis. 113, 55 N. W. 158. There are a multitude of decisions by other courts which hold that an agreement to contribute labor or property in consideration of receiving a part of the profits of some enterprise does not create a partnership where such profits are paid as compensation for the thing contributed. Reference is made to a few of them: *Denny v. Cabot,* 6 Met. (47 Mass.) 82; *Nantasket Beach S. Co. v. Shea,* 182 Mass. 147, 65 N. E. 57; *Estate of Smythe v. Evans,* 209 Ill. 376, 70 N. E. 906; *Thornton v. McDonald,* 108 Ga. 3, 33 S. E. 680; *Hanthorn v. Quinn,* 42 Oreg. 1, 69 Pac. 817; *Garrett v. Republican P. Co.* 61 Neb. 541, 85 N. W. 537; *Austin, N. & Co. v. Neil,* 62 N. J. Law, 462, 41 Atl. 834; *Rider v. Hammell,* 63 Kan. 733, 66 Pac. 1026; *McDonnell v. Battle House Co.* 67 Ala. 90.

We already have three decisions of this court which hold that an agreement to turn over a part of the crop raised in payment of rent is not inconsistent with the relation of landlord and tenant and does not create a copartnership. In other words, the landowner receives as compensation for the use of his farm part of the proceeds thereof. This is logical. The thing divided is not necessarily profits at all as far as the tenant is concerned. His share may have cost him more than it is worth, and the landlord is not called upon to make good any portion of the loss.

Notwithstanding the provision in reference to supervision and joint ownership, there is little to indicate that the money or property received by *Buttles* was not received as compensation for the use of the farm and personal property leased to his codefendant. We see no reason why a tenant may not agree with his landlord to pay as rent a portion of the produce raised and agree to give him title and the right to dispose of

such share and also extend to him the right to give advice, where he has placed in the possession of the tenant not only real estate but also personal property which would depreciate rapidly if not properly cared for. It is difficult to see how the thing to be divided was profits. It is seldom that a contract is prepared that more clearly shows an intent on the part of the parties not to create a partnership, and a further intent that whatever produce or money the lessor received because of what was raised on the farm was given him as compensation for its use.

It is not inherently impossible for the parties to make such an agreement as was made here and still have a situation where the share received by *Buttles* was received as compensation for the use of the farm. This being so, the intention of the parties as to what their relations should be between themselves should govern. 1 Parsons, Cont. (9th ed.) 158. The question of partnership is an important one, and we have not had the benefit of any argument upon it by counsel. It has been discussed because it was thought when the case was under consideration that the question was fairly involved and was a reasonably close one.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.