## STRAIN vs. GARDNER.

*September 25 — October 14, 1884.*

*(1) Lease: Payment of rent by share of crop: Estoppel to deny landlord's title. (2) Unlawful detainer by person cultivating on shares: Estoppel: Who is the "owner"?*

1. An agreement, under seal and binding heirs, executors, and assigns, providing that S. "does hereby lease" unto G. "her farm for the term of one year" from December 1, 1882, and that G. shall give "one third of all grain or roots raised, to be delivered in the half bushel, and one third of all the hay cut, in the stack," and shall furnish all seed and tools, and pay all threshing expenses, and keep the buildings and fences in repair, is *held* to be a *lease* creating between the parties the relation of landlord and tenant. After holding under such agreement, G. is estopped to deny the title of S. or that he holds possession from her.

2. Subd. 2, sec. 3359, R. S., was not intended to apply to cases in which the relation of landlord and tenant existed. The word "owner" in that subdivision means merely the person from whom the occu-

Strain vs. Gardner.

pant derived his temporary holding; and in proceedings for the summary removal of the occupant he is estopped, in like manner as a tenant, to deny the title of, or that he holds possession from, such "owner."

APPEAL from the Circuit Court for *Marquette* County. The case is stated in the opinion. There was a verdict in favor of the plaintiff, and from the judgment entered thereon the defendant appealed.

*Geo. E. Sutherland*, of counsel, for the appellant, contended, *inter alia*, that as it is undisputed that the plaintiff never had possession of the property in dispute, and there is no pretense that at any time the defendant took possession from her, the defendant is not estopped to question her title or right to the possession, even if the relation of landlord and tenant did exist between them. 1 Washb. on R. P. 358; 3 id. 463; Herman on Estoppel, 362, sec. 352; *Duchess of Kingston's Case*, 2 Smith's L. C. .734, *784; *Jackson v. Spear*, 7 Wend. 403; *Beall v. Davenport*, 48 Ga. 165; *Engels v. Mitchell*, 30 Minn. 122; *Page v. Kinsman*, 43 N. H. 328; *Lacy v. Johnson*, 58 Wis. 422; *Hoffman v. Harrington*, 22 Mich. 52; *Fuller v. Sweet*, 30 id. 240; *Kelly v. Sheehy*, 60 How. Pr. 439; *Archey v. Knight*, 61 Ind. 311; *Mann v. Brady*, 67 Ill. 95; *Doe v. Foster*, 3 Man., Gr. & S. 215; *Osterhout v. Shoemaker*, 3 Hill, 518; *Peralta v. Ginochio*, 47 Cal. 459; *Halloway v. Galliac*, id. 474; *Hall v. Trucks*, 38 Ark. 257; *Bertram v. Cook*, 32 Mich. 518; *Hughes v. Watt*, 28 Ark. 153; *Higgins v. Turner*, 61 Mo. 249; *Brahn v. J. C. Forge Co.* 38 N. J. Law, 74; *Frazer v. Robinson*, 42 Miss. 121; *Hardy v. Akerly*, 57 Barb. 148; *McAusland v. Pundt*, 1 Neb. 211; *Franklin v. Merida*, 35 Cal. 558; *Jackson v. Leek*, 12 Wend. 105; *Alderson v. Miller*, 15 Grat. 279; Taylor's Landl. & T. sec. 629; *Washington v. Conrad*, 2 Humph. (Tenn.), 562; *Givens v. Mullinax*, 4 Rich. Law (S. C.), 590.

*S. A. Pease*, attorney, and *P. G. Stroud*, of counsel, for the respondent, to the point that the rule that a tenant

cannot dispute the title of his landlord applies, whether the tenant was in possession before the lease was made or not, cited: *McConnell v. Bowdry's Heirs*, 4 B. Monroe, 392; *Prevot v. Lawrence*, 51 N. Y. 219, 222; *Patterson v. Hansel*, 4 Bush (Ky.), 654; *Richardson v. Harvey*, 37 Ga. 224; *Thayer v. Society of U. B.* 20 Pa. St. 60; *Cobb v. Arnold*, 8 Met. 398; *S. C.* 12 id. 43; Wood on Landl. & T. sec. 236.

ORTON, J. This is an action, under the forcible entry and unlawful detainer statute, to remove the defendant from the possession of certain lands after the time fixed in the lease or agreement for his occupancy thereof had expired. The complaint sets out the following lease under seal:

"Articles of agreement made and concluded this 7th day of July, 1882, by and between *Sarah Strain*, of Oxford, Marquette county, state of Wisconsin, party of the first part, and *E. M. Gardner*, party of the second part, of the same town, county, and state aforesaid: Witnesseth, that the party of the first part does hereby lease unto the party of the second part her farm for the term of one year, date to commence December 1, 1882, the same being known and described as the S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ and the S. W. $\frac{1}{4}$ of section 20, town 15, range 8. Party of the second part to give one third of all grain or roots raised, to be delivered in the half-bushel, and one third of all the hay cut, in the stack; to furnish all seed and tools, and pay all threshing expenses; and to keep the buildings and fences in as good repair as they now are, damage by the elements excepted. And it is mutually agreed between the parties that they bind their heirs, executors, and assigns, as well as themselves, to the faithful performance of these covenants. In witness, we have herewith affixed our hands and seals this day and year above mentioned.

[Signed]                              "E. M. GARDNER.  [Seal.]
                                      "SARAH STRAIN.   [Seal.]"

Strain vs. Gardner.

It is deemed proper to have set out this instrument particularly, as its effect was the vital question in the case. The complaint further alleges that a written demand was made upon the defendant to deliver up the possession of said premises held under said lease on the 3d day of December, 1883. The defendant, in his answer, states, in substance, that the south half of the southwest quarter of said section was not covered by said lease, and that he is, and was at the time the lease was executed, the absolute owner thereof in fee, and has been in the possession thereof, as such owner, since August 31, 1881, and that he is entitled to the possession thereof, and that the plaintiff had and has not any title or claim thereto.

.On the trial the plaintiff introduced the lease above set out. The defendant introduced a duplicate copy of the same lease, except that " north half of " the southwest quarter was inserted in the description, which left out the south half — the land in dispute. The defendant testified that he drew both copies and presented them to the plaintiff to be executed, and that he left the copy above set out with her and retained the other. For the purpose of explaining this discrepancy between the two copies, and to determine which expressed the real agreement and constituted the lease between the parties, testimony was admitted of the circumstances attending its execution, and, to some extent, the condition of the title to this south eighty. Testimony was introduced on behalf of the plaintiff tending to show that the copy of the lease retained by the defendant had been altered in respect to the southwest quarter by the insertion of "N. $\frac{1}{2}$ of" before the southwest quarter, and that when they were executed they were alike, and tending to show that the plaintiff was the owner of that south half as well as the north half of said southwest quarter. But this testimony was allowed only in order to determine which was the

lease between the parties, and it was so limited by proper instructions to the jury.

The defendant, in his answer, admitted the execution of the lease in respect to all of said premises except the south half of said southwest quarter; and alleged that, at the time of the expiration of the term fixed by said lease, he had quit the possession of the other parts of the premises. Under proper instructions, the above question was solely submitted to the jury on the evidence. The court was asked to instruct the jury that "the undisputed evidence shows that the defendant has title to the land in dispute superior to that of the plaintiff, and therefore the plaintiff cannot recover." This was refused, on the ground that the title of the plaintiff could not be tried and determined in this action. The defendant had also raised the same question by objection to evidence, because the complaint did not state that the plaintiff was the owner of the land. The jury rendered the proper general verdict for the plaintiff, and therefore must have found that the lease above set out was the real and true one between the parties.

The real and only question raised on this appeal is whether this lease created the conventional relation of landlord and tenant between the parties so as to estop the defendant from denying the title of the plaintiff in this action. It is contended by the learned counsel of the appellant that because this lease provides that the rent is to be paid by the delivery of one third of the crops raised on the premises, it is not technically a lease, and does not create the relation of landlord and tenant, but that it was a mere occupancy or holding by the defendant of these premises " under an agreement with the owner to hold and cultivate the same upon shares or for a share of the crops," under subd. 2, sec. 3359, R. S., and that, therefore, it was necessary for the plaintiff to both aver and prove that she was the owner of the premises. It

is argued that because that section has extended this summary remedy only to cases where such agreement is made *with the owner*, such ownership must be alleged and proved to bring the case within the statute. This provision was copied from the statutes of New York (ch. 471, Laws of 1874).

It was supposed that there was a class of holdings on shares which the provisions of the forcible entry and unlawful detainer statute did not embrace, because they were not holdings under a lease proper and did not constitute the relation of landlord and tenant. I have been unable to find any decision in that state in which this clause, " with the owner," has been passed upon, and the effect of which has been judicially determined. As an original question, therefore, I cannot think that the revisers, in copying this language, intended to extend this summary remedy to this lowest form of contract for the occupancy of land, and for mere tillage for a portion of the crops, and require the action to be brought before a justice of the peace, and make it essential that the plaintiff shall allege and prove title to the land, and allow the defendant to contest it with the same effect as in an action of ejectment, and so oust the jurisdiction of the only court in which the action can be brought. Such a construction of this language would make such an unimportant agreement, by which a stranger is admitted into the temporary occupancy of the land of another merely for the purpose of the raising of a single crop, a most dangerous and hostile possession, which could not be defeated without showing that the person from whom he obtained it for such purpose only was the legal owner of the land. Such a permissive possession would be protected, after its sole purpose had been accomplished and the term of it by the contract ended, far more than that of a naked intruder into lands in the possession of another; for against the latter the possession only need be shown. In such a contract, at least

the possession of the land in the person from whom the *cropper* obtained his right of temporary occupancy, is impliedly admitted, and, as we think, his title also. The word " owner," in this provision, is evidently used for want of a more ap- propriate one to indicate the person from whom this tempo- ràry holding is derived, in place of the word " lessor," which would imply a lease and the relation of landlord and tenant, not consistent with such a holding.

Before this provision was adopted in New York, many cases in which there was a joint tenancy in the crops, and no full and exclusive possession of the land for any certain time by the cropper, had been decided by the courts of that state not to be cases of lease and of landlord and tenant, or within the statute. But there had also been many cases where the lease provided for the payment of rent by a share of the crops, décided to be cases of lease proper, and within the old statute; such as *Jackson ex dem. v. Brownell*, 1 Johns. 267. In that case it was said the tenants had every character as such. They took under a contract for a year. They occupied the house. They had an interest or estate in the land. They paid the rent in grain. They might bring their own cattle on the premises and derive exclusive benefit therefrom, except from the grain which was to be' divided. And as in the case of *Stewart v. Doughty*, 9 Johns. 108: The lease was for five years, " to render, yield, and pay to the landlord one half of all the wheat, rye, corn, and other grain raised on the farm in each year, in the bushel." Chancellor KENT said in the opinion: "It being a lease for five years, by which Van Antwerp rented and hired, and suffered the lessee to possess and enjoy, the farm, and gave him the quiet and exclusive possession, etc., an interest in the soil passed," etc. And as in *Overseers v. Overseers*, 14 Johns. 365, where the two tenants lived and worked on a farm in common for about three years, and they had held it on shares, rendering half of the produce to the owner.

It was held to be a *bona fide* renting and occupying as tenant, and actually paying rent. It is said they had the entire control and ostensible possession of the farm, to sow and plant according to their discretion for three years. The one-half of the grain which they were to yield to the proprietor of the land ought to be considered as rent for the use of the farm. In these and many like cases the legal character of the holding has been determined to some extent on the phraseology and terms of the instrument.

Very many of these cases, and those in conflict therewith, were fully examined and commented upon in *Taylor v. Bradley*, 39 N. Y. 129, in which the true test to be applied to agreements in which the rent is to be paid in shares is thus laid down: "On the other hand, if A. should demise, lease, and let the farm to B., to have and to hold for the term of one or five years, to be cultivated in a husbandlike manner, rendering and paying to A. an annual rent for the use of the farm, to wit, one half of the crops raised, I perceive no sensible reason why the parties should not be deemed to intend an actual and technical lease." This seems to be the latest and settled doctrine in New York in respect to all such agreements by which the landlord places the tenant in the exclusive possession of the premises for a certain time, and proper and apt words are used to indicate a technical lease, and the stipulation to pay the rent in a share of the crops raised will not render it other than a lease.

But by this ruling a large class of cases of cropping contracts for a season, where the owner or landlord retains the possession and can direct the use of the premises at any time, and the cropper receives his compensation in a share of the products, or when the relation of master and servant, rather than of landlord and tenant, exists, and yet where the tenant refuses to deliver up the premises to the owner, are left unprovided for by the summary action of unlawful detainer, as it stood before this provision was made in 1874.

Now in all such cases, where the time fixed in the agreement for such occupancy has expired, the person so cultivating on shares may be compelled in this action to surrender to his landlord. This provision construed in the light of the above decisions, the landlord ought not to occupy a more unfavorable position in the action than the landlord in a technical lease seeking the same remedy. The tenant holds under him as owner, has received from him as owner whatever possession he has, and he should be estopped from denying his title as in the technical relation of landlord and tenant. We are clearly of the opinion that setting out the agreement by which the person so cultivating a farm on shares has entered and holds possession, is a sufficient allegation that such agreement was made with the owner of the land, and the tenant is estopped from denying it. We have felt compelled to place a construction upon this new provision in this respect because its language may be broad enough to embrace all cases where the agreement for rent is for a share of the crops, if it is technically a lease, and the relation of landlord and tenant exists, although we do not believe that there was any intention that it should embrace such cases. For such cases the remedy was always ample under the statute.

The principle that the tenant cannot dispute and is estopped from denying the title of his landlord has been established by too many decisions of this court, and of all courts, and is too elementary, to require the citation of authorities; but we may not ignore the true legal character of this instrument as a lease, and the true relation of the parties to it as landlord and tenant. By all the later and most approved authorities, in most all the states, as in New York, this instrument is a lease, and the defendant may be, and was, properly proceeded against as a tenant holding possession after the expiration of the term fixed therein, under the old provisions of the statute. This instrument is

drawn with great formality, and the language is apt and pertinent: "The party of the first part does hereby *lease* her farm," etc.   One third of the grain, roots, and hay is to be *delivered*.   The tenant has all the buildings on the premises, and is to keep them in repair.   The term is one year, from December to December,— a longer time than a *cropping* season merely.   There is no possession reserved to the landlord during the term, or any control over the premises.   It is under seal, and is made to bind heirs, executors, and assigns.   The intention is clear enough that the instrument should be and have all the effect of a lease, if it can be determined from any such an instrument.

In *Fry v. Jones*, 2 Rawle, 11, there was a formal lease of a grist-mill, and a house and lot with it, the lessee to render one third of the toll of the mill.   The question was whether there could be *distress* for this rent.   It was objected that it was no lease, because the rent was uncertain.   It was held that such rent was sufficiently certain, because it could be rendered certain *(Id certum est quod certum reddi potest);* and the distress was sustained.   It was held in that state, subsequently, in *Burns v. Cooper*, 31 Pa. St. 426, and in *Ream v. Harnish*, 45 Pa. St. 376, that an agreement to let a farm for a certain term for a share of the grain to be *delivered* to the landlord was a lease, and the landlord had no ownership of or interest in the crops while growing which he could convey; and, if he died before his share was ready for delivery, it would go to his heirs and not to his executors.   It is held in Massachusetts that under such a lease the landlord has no property in the crops until they are divided *(Geer v. Fleming*, 110 Mass. 39; *Darling v. Kelly*, 113 Mass. 29; *Warner v. Abbey*, 112 Mass. 355), thus establishing it as a technical lease, under which the tenant has exclusive possession.   The case of *Jordan v. Staples*, 57 Me. 352, is distinguished from a lease of a farm making the rent a share of the crops and the landlord reserving no right of occupancy

for any purpose during the term and having no property in the crops until divided, because the landlord reserved the possession for certain purposes.

In *Harrison v. Ricks*, 71 N. C. 7, " A. rents a farm from B. for one year, agreeing to furnish and feed the teams, and to find the farming utensils, to make the crops, and furnish and pay for the labor, and give B. one half of the crop as rent." It was held to be a lease. That case is not so clear a tenancy as the one in this case, and yet the court held that A. was tenant and not a cropper, and had the right to convey the crop, subject to the right of the landlord to his share as rent. It is stated in the opinion that " the difference between a *tenant* and a *cropper* is — a tenant has an estate in the land for a term, and consequently has a right of property in the crops. It is he who divides off to the landlord his share, and until such division the right of property and of possession in the whole crop is his." On a similar lease and to the same effect is *Sargent v. Courrier*, 66 Ill. 245; *Lacy v. Weaver*, 49 Ind. 373; *Rinehart v. Olwine*, 5 Watts & S. 157; and *Doremus v. Howard*, 23 N. J. Law, 390. Under such a lease the lessee can bring trespass against an intruder upon the land or a disturber of the crops, without joining his landlord, for the exclusive possession of both are in him. *Larkin v. Taylor*, 5 Kan. 433. In *Walls v. Preston*, 25 Cal. 59, the contract was substantially the same as in this case, and it was held in law a lease. It is held in one of these cases that the use of the words *deliver to the landlord* his share, is strong ground for holding the agreement a lease. See, also, to the same effect, *Alwood v. Ruckman*, 21 Ill. 200; *Blake v. Coats*, 3 Iowa, 548; *Hoskins v. Rhodes*, 1 Gill & J. 266; *Moulton v. Robinson*, 27 N. H. 550; *Aiken v. Smith*, 21 Vt. 180; *Hatch v. Hart*, 40 N. H. 98; Taylor on Landl. & T. § 25, and note 6.

By the strong current of authority this agreement is in every essential a lease, and the relation of the parties as

landlord and tenant precludes the defendant from denying the title of the plaintiff or setting up title in himself to the premises, or any part of them. It would be a violation of the same principle to allow the defendant to show that the plaintiff had no possession to give, or that he did not hold the possession from the plaintiff. He is equally estopped by his lease from denying the possession as the title of the plaintiff, for thereby he has acknowledged both. The instructions of the court to the jury, excepted to by the learned counsel for the appellant, are in accordance with this opinion.

The construction of this new provision of the statute in respect to the cultivation of land on shares being an entirely new question, so far as I can find, and the last question, as to the legal effect of such an agreement, being new in this court, and both having been ably argued by counsel, must be the apology for this long opinion.

*By the Court.*— The judgment of the circuit court is affirmed.

