TAYLOR, Appellant, vs. DONAHOE, imp., Respondent.

*May 2—October 3, 1905.*

*Crops: Ownership: Landlord and tenant: Cropper: Garnishment: Liability of garnishee of cropper: Chattel mortgages.*

1. The distinction between a tenant and a cropper is that a tenant has an estate in land for a given time and a right of property in the crops, and hence makes the division thereof between himself and the landlord in case of an agreement upon shares, while a cropper has no estate in the land nor ownership of the crops, but is merely a servant, and receives his share of the crops from the landlord, in whom the title is.

2. Whether a party occupies the position of tenant or cropper is always a question of construction of the agreement under which he is acting.

3. An agreement under which crops were raised nowhere referred to F., who put in the crops, as a tenant, but specifically referred to his work as "service," and expressly provided that D., the owner of the soil, should pay him for his service by certain shares of the crops; that the possession of the land and ownership of the crops were to remain in D., and that F. was merely to be an employee in tilling the land and caring for stock. *Held*, that F. was a cropper.

4. In such case the fact that F. was to put some stock on the place and furnish certain seed and tools, and was given the right to use certain rooms in the house, did not change the relation between the parties, in the face of the definite and certain clauses of the agreement, and such agreement is not necessarily inconsistent with the fact that F. was a cropper.

5. In such case the garnishee of F., to whom he had delivered a portion of the crops, cannot be held liable, since he neither had possession of any property belonging to F. nor was he indebted to him.

6. In such case a chattel mortgage, given by the cropper before division of the crops, would not make the cropper owner of any part of the crops.

KERWIN, J., dissents.

APPEAL from a judgment of the municipal court of Rock county: CHARLES L. FIFIELD, Judge. *Affirmed.*

This is a garnishee action. The plaintiff, *Taylor,* sued Thomas Finnegan in justice court, and garnished one E. M. Calkins. *Taylor* recovered judgment in the main action for $138, damages and costs. The garnishee, Calkins, answered to the effect that in March, 1903, he purchased from *Donahoe* a crop of tobacco for the agreed price of $753.74, which was delivered to him by the defendant Finnegan; that he had paid one half thereof to *Donahoe,* and had in his hands the remaining half, $376.87, and that one Patrick Cullen claimed to own a part of said fund and *Donahoe* the residue; and he brought the $376.87 into court and demanded that Cullen and *Donahoe* be interpleaded. Thereupon Cullen and *Donahoe* were interpleaded in the garnishee action, and trial was had in justice court and judgment rendered finding that Cullen was entitled to $157.96 of the fund, the plaintiff was entitled to

$138, and *Donahoe* the balance, $80.91.   *Donahoe* appealed
to the municipal court of Rock county from that part of the
judgment awarding any part of the fund to the plaintiff.
Upon the trial in the municipal court, without a jury, it ap-
peared that about the 1st day of April, 1900, the respondent,
*Donahoe,* and the said Thomas Finnegan made a written
agreement for the cultivation of certain lands owned or con-
trolled by *Donahoe* in Rock county, which agreement pro-
vided, among other things, that Finnegan was to cultivate the
lands and do all the work of raising crops and caring for stock
and marketing products, his "term of service" to begin on
April 5, 1900; also to furnish, besides his services, certain
specified stock to be kept upon the farm, and seeds to be used,
to repair fences and buildings, feed and care for all stock,
and do all work in a good and husbandlike manner, to the
satisfaction of *Donahoe.*   The agreement further contained
numerous stipulations with regard to the sharing of expenses
between *Donahoe* and Finnegan, and also provided that *Dona-
hoe* should pay to Finnegan, "in full compensation for his
services" under the agreement, one third of all corn, oats, hay,
and apples, one half of all potatoes and tobacco, one third of
the increase in live stock by breeding, and the produce of the
dairy, which Finnegan agreed to accept in full payment for
the raising of the crop, caring for the stock, and for all things
furnished by him under the agreement.   It was also provided
that if Finnegan failed to perform the services fully, required
of him by the agreement, in the judgment of *Donahoe,* he
(*Donahoe*) might hire the work necessary to be done and de-
duct the expense thereof from Finnegan's share of the crops.
It was further provided:

"The possession of the said premises and the title to said
crops until the same are divided shall be and remain in said
first party [*Donahoe*] ; the said second parties shall be merely
employed as his employees in cultivating said land and caring
for said stock."

*Donahoe* was also to have the right to select the ground upon which the various crops were to be raised. The agreement was expressly characterized as a personal agreement, and it was provided that Finnegan was to have the use of the dwelling-house upon the lands, except certain parts which *Donahoe* reserved for his own use. It further appeared that Finnegan entered and occupied the farm under this agreement and raised a crop of tobacco thereon; that *Donahoe* did not reside on the farm during the term, and that the agreement was never recorded; that, after the crop of tobacco was raised, Finnegan gave to Cullen, with *Donahoe's* consent, a chattel mortgage upon an undivided one half of the crop of tobacco, which was duly recorded; that the plaintiff, *Taylor,* afterwards received from Finnegan a chattel mortgage upon the crop of tobacco to secure an antecedent debt, and that before taking his mortgage he saw Cullen's mortgage on file; that afterwards *Donahoe* sold the whole crop to the garnishee, Calkins, as his own, and that he had not at that time divided the crop; and that the tobacco was hauled to Calkins's warehouse by Thomas Finnegan. Upon these facts the municipal court concluded that the entire sum paid into court was the money of *Donahoe,* and that Calkins was not indebted to Finnegan in any sum. The court thereupon rendered judgment dismissing the garnishee proceeding, with costs, and *Taylor* appeals.

For the appellant the cause was submitted on the brief of *Ruger & Ruger.*

*Edward H. Ryan,* for the respondent.

The following opinion was filed June 23, 1905:

WINSLOW, J. Really the only question in the case is whether *Donahoe* or Finnegan owned the crop of tobacco sold to Calkins, and this question is answered when it is determined whether Finnegan was a tenant or a cropper. If a tenant, he owned the crop; if a cropper, *Donahoe* owned it

and was entitled to dispose of it. The distinction between a tenant and a cropper is that a tenant has an estate in the land for a given time, and a right of property in the crops, and hence makes the division thereof between himself and the landlord in case of an agreement upon shares, while a cropper has no estate in the land, nor ownership of the crops, but is merely a servant, and receives his share of the crops from the landlord, in whom the title is. *Strain v. Gardner,* 61 Wis. 174, 21 N. W. 35; *Kelly v. Rummerfield,* 117 Wis. 620, 94 N. W. 649, 8 Am. & Eng. Ency. of Law (2d ed.) 324, 325. It is always a question of construction of the agreement under which the parties are acting. The agreement in question here seems to us to be very clear and definite upon the subject. It nowhere refers to Finnegan as a tenant, but specifically refers to his work as "service," and expressly provides that *Donahoe* shall pay him for his services by certain shares of the crops, and that the possession of the land and ownership of the crops are to remain in *Donahoe,* and that Finnegan is merely to be an employee in the tilling the land and caring for the stock. Language could hardly be plainer or more appropriate for the purpose of creating a cropper arrangement. The fact that Finnegan was to put some stock on the place and furnish certain seed and tools, and was given the right to use certain rooms in the house, cannot reasonably be considered as changing the relation between the parties, in the face of the definite and certain clauses of the agreement. These agreements are not necessarily inconsistent with the fact that he was an employee or cropper. It follows that, when the garnishee summons was served, Calkins neither had possession of any property belonging to Finnegan nor was he indebted to him, and hence could not be held liable as garnishee. Even if the mortgage given by Finnegan to *Taylor* were to be held valid, the result would not be different, for this fact would not make Calkins indebted to Finnegan, or make Finnegan the owner of any

part of the crop before division thereof by *Donahoe,* and there is no evidence that any division of either the crop or the proceeds was ever made.

*By the Court.*—Judgment affirmed.

KERWIN, J., dissents.

A motion for a rehearing was denied October 3, 1905.