SCHULTZ, Respondent, vs. WILLIAMS, Appellant.

*January 12—February 9, 1932.*

The cause was submitted for the appellant on the brief of *Stephenson, Fisher & Richardson* of Kenosha, and for the respondent on that of *C. A. Tennessen* of Kenosha.

NELSON, J. In 1927 the defendant was the owner of a farm located in Kenosha county. He was desirous of renting it so that he might be relieved of its burdens and devote himself to another occupation. He learned that Fred Schultz, a brother of the plaintiff, might be interested in renting it. As a result of oral negotiations it was agreed between the defendant and Schultz that the latter would rent the farm. He thereafter entered into its occupancy. Just what the terms of the preliminary oral agreement were does not very satisfactorily appear. However, within two or three days after Schultz began to occupy the farm the defendant brought to him an original and copy of a proposed lease. This proposed agreement was typewritten and was read over by both parties. Each kept a copy of it in his possession although through neglect it was never signed by either party. Both parties, however, testified that the unsigned agreement embodied the actual agreement between the parties and during the time that Schultz stayed on the farm constituted the agreement under which the farm was occupied and operated by him. The plaintiff offered in evidence a single paragraph of the unsigned agreement in which the defendant agreed to furnish certain cattle that were on the place at the time of the commencement of the term, certain machinery, four horses, *half of the feed and seed purchased,* and pay one-half of the following farm expenses : silo filling, threshing, binder twine, veterinary fees, and fertilizer. The referee who tried the action received in

evidence the single paragraph mentioned but refused to receive the whole agreement when offered by the defendant. The unsigned agreement, however, appears in the record and we perceive no reason why it may not be considered and construed in view of the fact that its construction presents only a question of law, and since both the defendant and Schultz testified that it correctly embodied their oral agreement and constituted the agreement under which the farm was occupied and operated. Under the circumstances it should have been received in evidence even though it was never signed and even though the five-year term mentioned therein was never agreed to.

The agreement contained, among other provisions, the following language: "The said party of the first part does hereby *let and lease* unto the said party of the second part his farm," etc.; "that this *lease* be accepted as a compact between the two parties;" "that said party of the second part agrees to operate said farm to the best of his ability, using such practices in his farming operations as are generally recognized as being the proper agricultural practice, to sell no straw from the farm, to use all feed grown on the place necessary to keep livestock in good condition *before disposing of any otherwise,* to furnish all necessary labor employed in farm operation, which includes milk hauling, to co-operate with said party of the first part in making minor repairs such as in building fences, etc., which will prove of mutual advantage to said parties of the first part and second part." "The said party of the second part further agrees to leave all buildings, machinery, tools, etc., intrusted in his care in as good condition as when taken over by him, except that caused by ordinary wear and depreciation. It is hereby distinctly understood and agreed by the party of the second part that the farm house being a new building and in excellent condition at the present time, that he shall use utmost

care in keeping it in such condition and shall place himself liable to all damage incurred beyond ordinary wear."

While agreements relating to the leasing or working of farms sometimes give rise to perplexing questions as to whether a particular agreement is a lease or a mere cropper's agreement, the court in this case has no difficulty in reaching the conclusion that a lease of defendant's lands resulted from the oral agreement as made definite and certain by the unsigned written agreement, under which the farm was concededly occupied and operated. *Strain v. Gardner,* 61 Wis. 174, 21 N. W. 35; *Kelly v. Rummerfield,* 117 Wis. 620, 94 N. W. 649; *Taylor v. Donahoe,* 125 Wis. 513, 103 N. W. 1099; 36 Corp. Jur. p. 683, §§ 1913 to 1917 inclusive.

The language denominating the agreement a lease; the agreement to keep the several properties in repair, coupled with the undisputed circumstance that Schultz was given the sole possession and management of the farm; the fact that Schultz was not told what crops to plant or where to plant them or the number of acres to be devoted to each, and that he was authorized to dispose of crops not necessary to keep the livestock in good condition, rather conclusively shows that it was the intention of the parties to enter into a lease and to establish the resultant relation of landlord and tenant between them. The manner in which the farm was operated by Schultz, viewed as a practical construction of the agreement under which the farm was operated, is wholly consistent with the relation of landlord and tenant.

There is abundant evidence in the record to sustain the approved findings of the referee that plaintiff sold to Fred Schultz, during the time he occupied defendant's farm, certain hay, seed, feed, and milk. Both the referee and the court below seemed to be of the opinion that mere proof of sales of produce to Fred, under the circumstances, was all that was necessary to create liability on the part of the de-

fendant since the defendant had agreed to furnish half of the feed and seed purchased, and that the agreement was sufficient to authorize Fred Schultz to purchase feed and seed on defendant's account. We have searched in vain for any authority so holding. The relation of landlord and tenant gives rise to no such authority. A farm tenant may not thus bind his landlord even though the landlord has agreed to furnish one-half of the feed and seed, in the absence of an original agreement between the landlord and a third party or of facts giving rise to an estoppel. See *State Bank of Eastman v. Rawson,* 182 Wis. 422, 196 N. W. 779, which dealt with a somewhat similar controversy.

A reading of the testimony reveals that the plaintiff sold all of the hay, feed, seed, etc., to his brother Fred without notice to the defendant as to such sales. The plaintiff testified over and over again substantially as follows: Fred asked me to sell him things along the line of farm produce. I supplied him feed for his cattle. I sold him corn. I sold him silage. I sold him seed. I sold him milk. I sold him oats. Fred himself testified that he bought the produce from the plaintiff because he thought his brother would carry him along better than would the feed stores. The plaintiff never told the defendant that he was selling supplies to Fred. The defendant was never present when any produce or supplies were sold or delivered to Fred. No credit was extended to Fred by the plaintiff on the strength of any assurance given him by the defendant. No statements of the account were sent to the defendant and no claim made against him until some considerable time after Fred had settled his account with the defendant and had left the farm in the fall of 1927. There is nothing in the proven facts which even tends to bring plaintiff's claim within the doctrine of the cases which hold that a parol promise to pay for property purchased by another, if made at the time of the purchase and under cir-

cumstances tending to show that credit is given solely to the person promising, is an original contract and valid and not within the statute of frauds. *Hall v. Wood,* 4 Chand. 36, 3 Pin. 308; *Champion v. Doty,* 31 Wis. 190.

The plaintiff testified that after Fred left the farm he met the defendant on the highway and informed him of a claim that he had against him for produce, etc., sold to Fred while the latter occupied the farm, and that the defendant thereupon stated that if he owed the plaintiff anything he would pay it when he had funds. This conversation took place long after the produce had been sold to Fred and after he had left the farm. Any promise at that time to pay is clearly within the statute of frauds. *State Bank of Eastman v. Rawson, supra,* containing numerous citations.

It is the conclusion of the court that the agreement under which Fred occupied the defendant's farm created the relation of landlord and tenant between them; that Fred, as a tenant, had no authority to bind his landlord in purchasing seed or produce from a third party even though as between him and his landlord there existed an agreement whereby the landlord agreed to furnish half of the seed and feed purchased; that the produce for which claim is made was sold to Fred, who thereby became the primary or original debtor; that there is nothing in the record tending to show any participation in the purchase of the produce by the defendant or in any way tending to make him an original promisor or debtor, and that a promise by the defendant to pay Fred's debt long after the credit had been extended and after the defendant and Fred had settled their accounts, is clearly within the statute of frauds and that the plaintiff therefore cannot recover from the defendant for one-half of the produce furnished.

The liability of the defendant created by his agreement to furnish one-half of the feed and seed was one personal

to the parties thereto. While the agreement would permit Fred Schultz to recover from the defendant any balance due him resulting from his purchase of feed or seed under the agreement, it cannot, by virtue of its terms alone, be held to give to the plaintiff a cause of action against the defendant.

It is not to be understood from anything said in this opinion that a different result would be reached if the relation of owner and cropper had existed between the defendant and Schultz. In order to establish liability of an owner for goods purchased by a cropper, authority to purchase goods on the credit or account of the owner would have to be shown at least by circumstances which would give rise to an original promise by the owner to pay.

In the view we take of this action it becomes unnecessary to decide whether the sale of the seed by the plaintiff, who was merely a farmer and not a dealer in seeds, constituted a void transaction under the provisions of secs. 96.15 and 96.27 of the Statutes, the seed sold not having been inspected by the state. It is also unnecessary to decide whether the sale of milk by the plaintiff to his brother Fred Schultz during the months of August, September, October, and November, for the well understood purpose of permitting Fred Schultz as tenant of defendant's farm to establish a higher milk base under a contract with the Bowman Dairy Company than either he or said farm was entitled, was a fraud which would prevent recovery.

*By the Court.*—Judgment reversed, with directions to enter judgment dismissing the complaint.