358

Atwood, Respondent, vs. Freund, Sheriff, Appellant.

*October 8—November 5, 1935.*

For the appellant there was a brief by *Duffy, Duffy &
Hanson,* attorneys, and *Ervin A. Weinke* of counsel, all of
Fond du Lac, and oral argument by *Mr. Weinke.*

For the respondent there was a brief by *Hooker & Wagner*
of Waupun, and oral argument by *W. A. Wagner.*

FOWLER, J. It is conceded that if the contract between
Atwood and Clay was a cropper's contract, as distinguished
from a lease, the judgment must be affirmed.

In case of a lease the possession of the land is in the lessee,
while in a cropper's contract the possession is in the land-
owner. A cropper may live on the land, but such possession
as he has is incident to the performance of his contract of
service, and is deemed to be for the landowner and to be his
possession. The cropper's possession is not the legal posses-
sion. The legal possession is in the landowner, and as inci-
dent to this legal possession the title to the crop is in the land-
owner. The cropper has no title to the crop until it is divided
and appropriated by him, and the division of the crop is
made by the landowner. *Kelly v. Rummerfield,* 117 Wis.
620, 94 N. W. 649; *Taylor v. Donahoe,* 125 Wis. 513, 103
N. W. 1099; *Herreid v. Broadhead,* 211 Wis. 512, 248
N. W. 470.

Many of the provisions of the contract are appropriate
for inclusion in either a lease or a cropper's contract. It
starts out with the statement that Clay desired to work the
farm of Atwood. It does not contain the words, "let, lease
and demise," commonly used in a lease, or any other words
purporting to transfer any interest or estate in the land to
Clay, although it uses the words "the lease" in a provision
thereof relating to its termination. It calls for equal division
between Atwood and Clay of all produce and stock when
sold. On selling cattle, Atwood was to decide which cattle
should be sold. Atwood had the right to enter on the land at

all times, and to do or cause to be done any work thereon he deemed necessary, and to have any work done at Clay's expense that Clay was obligated to do and failed to do. The contract provided that Atwood should furnish thirty-six head of cows, two two-year-old heifers, and two heifer calves, and that the same number of female cattle of like age should be left on the place on termination of the contract, which was to continue from year to year until terminated as in the contract provided. This and the provision for Atwood's determining what cattle should be sold imply that accretion to the cattle was contemplated, and that the increase should be divided. The property on the place, both stock and produce, when Clay went on the land, was the property of the landowner, who by bill of sale purchased the interest of Clay's predecessor therein prior to the execution of Clay's contract. It was agreed that Clay should purchase from the landowner the interest in the property that Clay's predecessor conveyed to the landowner, but Clay never carried out the agreement by payment. The grain levied on was grown the fourth year after the execution of the contract.

In view of the law and the contract provisions as above stated, we agree with the trial court that the contract is a cropper's contract, that the property levied upon was the property of the plaintiff, that the sheriff's seizure of it was wrongful, and that the plaintiff was entitled to its possession.

*By the Court.*—The judgment of the circuit court is affirmed.