LOWELL B. JACKSON, Secretary Department of Industry, Labor andHuman Relations
You ask whether a "sharecropping agreement" between an employer and a migrant worker violates the Wisconsin Migrant Law, secs.103.90-103.97, Stats. You indicate that some employers have offered sharecropping agreements to migrant workers under which the workers are paid in crops harvested rather than in cash.
It is assumed that the grower furnishes the land and supplies and keeps general supervision over the land where the crop is being grown. Such a worker is called a "cropper." "A cropper is as much a servant as if his wages were fixed and payable in money." 21 A Am. Jur. 2d Crops § 35 at 64 et seq., and 95 A.L.R.3d 1013.
The Wisconsin Supreme Court has followed the general rule that, absent an intent by the parties to establish a landlord-tenant relationship, an agreement that an owner share a crop with one who has either cultivated or harvested the crop establishes an employer-employe relationship. Kelly v. Rummerfield,117 Wis. 620, 94 N.W. 649 (1903); Atwood v. Freund, 219 Wis. 358,263 N.W. 180 (1935). Since the sharecropping agreement establishes an employer-employe relationship, the migrant is not an independent contractor and the agreement is subject to the provisions of secs. 103.915 and 103.93 (1), Stats.
It is probable that other attempts will also be made to establish the migrant worker in the role of an independent contractor. However, it is my opinion that both the sharecropper agreement or any *Page 93 
other method of paying compensation to the migrant worker in anything but cash, check or draft for the work performed are proscribed by the provisions of the Wisconsin Migrant Law, ch. 17, Laws of 1977. This law created secs. 103.90 through 103.97, Stats., which comprehensively regulate, inter alia, the wages, hours and conditions of employment of migrant workers. The intent of the Legislature in enacting the Wisconsin Migrant Law is clearly stated in ch. 17.
 SECTION 1. Intent. It is declared to be the intent of this act to improve the status of migrant workers in this state. This goal is to be accomplished by creating a council on migrant labor in the department of industry, labor and human relations and by providing standards for: wages, hours and working conditions of migrant workers; certification, maintenance and inspection of migrant labor camps; recruitment and hiring of migrant workers; and guaranteeing the right of free access to migrant labor camps to ensure that migrant workers and their families are not isolated from the rest of the community or from services to which they are legally entitled.
Section 103.90 (2), Stats., defines "employer" as "a person engaged in planting. cultivating, harvesting, handling, drying, packing, packaging, processing, freezing, grading or storing fruits and vegetables; in nursery work; in sod farming or in Christmas tree cultivation or harvesting who employs a migrant worker." Section 103.90 (4), Stats., defines a "migrant worker" as follows:
 [A]ny person who temporarily leaves a principal place of residence outside this state and comes to this state for not more than 10 months in a year to accept seasonal employment in the planting, cultivating, harvesting, handling, drying, packing, packaging, processing, freezing, grading or storing of fruits and vegetables; in nursery work; in sod farming or in Christmas tree cultivation or harvesting.
Section 103.915, Stats., requires that the employer and migrant worker enter into a "work agreement." In my opinion, the extensive provisions of this section are incompatible with a sharecropping contract or a contract whose terms otherwise purport to make the migrant worker an independent contractor. For example, sec. 103.915 (4)(b), Stats., requires that the work agreement guarantee a minimum of twenty hours of work in one work week and subsec. *Page 94 
(4)(c) provides that the guaranteed wage together with other terms and conditions of employment be not less favorable than those provided by the employer for local workers for similar work. In addition, sec. 103.915 (4)(a), Stats., provides that the work agreement must contain a statement regarding "applicable wage rates." Finally, sec. 103.93 (1), Stats., provides that "[w]ages shall be paid in U.S. currency or by check or draft." Clearly, the migrant law contemplates that provision be made for the payment of wages by cash, check or draft, and that the employer make contributions to and deductions from wages for the benefit of the employe as required by state and federal law.
The employers who offer sharecropping contracts or who are otherwise attempting to give migrant workers the status of independent contractors apparently seek to avoid not only the requirements of the Wisconsin Migrant Law, but numerous other state and federal laws regulating the employer-employe relationship. Such laws include liability under social security, unemployment compensation and workers compensation laws, as well as state and federal wage and hour laws. It is my opinion that such contracts are invalid because they constitute a violation of sec. 103.915, Stats. Their use may be proscribed by departmental order and violations may be punished by forfeiture under sec.103.97, Stats.
In reaching this conclusion, I have considered the possible contention that this opinion leads to an unconstitutional interpretation of the Wisconsin Migrant Law as constituting an impairment of the obligation of a contract or the unconstitutional taking of property without due process. United States Constitution art. II, sec. 10, cl. I and Wis. Const. art. I, sec. 12, prohibit laws impairing the obligation of contracts, and the Fourteenth Amendment to the United States Constitution and Wis. Const. art. I, sec. 1, prohibit state action resulting in the taking of property without due process of law.
I understand that the contracts in question were made after June 6, 1977, the effective date of the Wisconsin Migrant Law. Therefore this is not a case where a law has come into effect to disrupt an existing contractual obligation. Rather, it is a situation in which an attempt is being made to enter into a contract which is unlawful because of an existing law. In HudsonWater Co. v. McCarter, 209 U.S. 349, 357 (1908), a case involving a similar situation, Justice Holmes stated: "One whose rights, such as they are, are subject to *Page 95 
state restriction, cannot remove them from the power of the State by making a contract about them."
The authority of the state to impose restrictions on constitutional rights is derived from its residual police power.Manigault v. Springs, 199 U.S. 473, 480 (1905); Nebbia v. NewYork, 291 U.S. 502 (1933); Chicago N.W. Ry. v. La Follette,43 Wis.2d 631, 169 N.W.2d 441 (1969) and State ex rel. Bldg. Ownersv. Adamany, 64 Wis.2d 280, 219 N.W.2d 274 (1974). In the latter case the court stated: "We have thus accepted the proposition that the obligation of contract is not an absolute right, but is one that may be obliged to yield to the compelling interest of the public — the exercise of the police power." Id. at 292.
Whether it is contended that either due process or the prohibition against impairment of the obligation of contracts has been violated, or both, legislation is valid if it constitutes a proper exercise of police power. In order that legislation not be unconstitutional, however, it must be reasonable, and must not be capricious or arbitrary. In addition, it must have a real and substantial relation to the object of the legislation. Nebbia,291 U.S. at 524-25, cited in Chicago, 43 Wis.2d at 644. Numerous types and areas of business are subject to state laws restricting not only the use of private property but also interfering with the right of private contract. Nebbia, 291 U.S. at 526-30 n. 20-35.
It is clear that the economic and social conditions of the migrant worker are a matter of national concern. The Wisconsin Migrant Law is aimed at improving the status of the migrant worker and the remedies afforded bear a reasonable relationship to this goal. Therefore, it is my opinion that the Wisconsin Migrant Law constitutes a constitutional exercise of state police power and prohibits sharecropping agreements.
BCL:JWC