NANTASKET BEACH STEAMBOAT COMPANY *vs.* DANIEL SHEA
& another.

SAME *vs.* HINCKEL BREWING COMPANY.

SAME *vs.* FRED PRESTON.

Suffolk. March 3, 1902. — October 30, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Corporation,* Ultra vires. *Partnership. Hotel.*

If a steamboat company exceeds its powers by the purchase of a hotel, yet having a good title against all the world, except perhaps the Commonwealth, it can lease the hotel to another and can sue a third person on a guaranty that the rent shall be paid.

Here assumed, that the enumeration of certain powers in the charter of a corporation excludes and forbids the exercise of others except so far as incidental and necessary to those granted.

The fact, that the owner of a hotel in letting it to another provides for an additional rent of a certain percentage of the gross receipts in excess of a sum named, does not make the lessor a partner in the hotel business nor give him such an interest that he rightly can be said to be engaged in carrying on a hotel.

MORTON, J. These are three actions upon as many bonds given by the defendants respectively to the plaintiff, to secure payment of the rent reserved in a lease by the plaintiff to Charles B. Turner and Hall M. Howard of property described as the Hotel Nantasket property belonging to the plaintiff and situated in Hull. The actions were tried together before a judge without a jury, and there was a finding in each case for the plaintiff. The defendants asked certain rulings which were refused, and also excepted to the admission of certain evidence. The cases are here on the defendants' exceptions.

The plaintiff is a Massachusetts corporation organized for the purpose of running a line of steamboats "between Boston and Hull, Downer's Landing and Hingham or other places," and becoming a common carrier of passengers and freight between these points, and to that end authorized to purchase a steamboat and a steamboat route and the wharves at Hull and Hingham

and the right to touch at Downer's Landing, "with all the appurtenances and privileges necessarily and ordinarily connected therewith." It purchased a wharf at Nantasket on the westerly or inner side of the beach, and the property described as the Hotel Nantasket property on the ocean side of the beach, consisting of the hotel and other buildings used for amusements, roller coasts, clam-bakes, restaurant, theatre, etc. There is a railroad and highway between the wharf property and this property, the plaintiff's passengers crossing the railroad to and from the highway by a private way. At the time of the purchase the property was fully fitted up and furnished as a hotel, and had been run as such with the other places of amusement, and after the purchase was let by the plaintiff for the same purposes and so used, and was opened only during the season of the year that the plaintiff's boats ran. There was testimony which was objected to, tending to show that the hotel was used for sheltering passengers who went down on the plaintiff's steamboats, and that it was necessary to the success of the plaintiff's line of business. .The lease was for five years from January 1, 1899, at the rate of $10,000 a year, payable, $2,000 July 10, $3,000 August 1, $3,000 August 15, and $2,000 September 1, in every year. There was also a provision binding the lessees to pay as "an additional yearly rent," on the first day of November in each year, a sum equal to twelve and one-half per cent on their nine months' receipts in excess of $70,000, and to keep true and proper books of account which should be open at all times to the inspection of the plaintiff. The lease included all the furniture, bedding, linen, crockery, etc., and bound the lessees to replace such as were worn out, destroyed or lost, and also bound them "to keep a respectable, clean, orderly and in all respects a first class establishment, including all departments, hotel, café, bathhouse, amusements," etc.

The rent due September 1, 1899, was not paid when due, and has never been paid; and shortly after September 1 the surviving lessees surrendered the premises and the plaintiff took possession, and, so far as appears, has retained it ever since.

The bonds bear date January 30, and February 2 and 3, 1899, respectively, and were executed by the several defendants at the

request of the lessees.  By reason of the lease the defendants supplied merchandise to the lessees as a customer, and that fact led them to execute the bonds.

The defendants contend that the lease and bonds were *ultra vires,* and that the testimony referred to was incompetent.  We think that neither objection is valid.

If the purchase of the hotel property was in excess of the powers of the plaintiff, nevertheless it has a title to it good as against all the world, except perhaps the Commonwealth ; and we do not see why it cannot sell it or lease it, and if it can lease it why it cannot recover on a guaranty by a third person that the rent shall be paid.  The power to lease is an incident of the ownership.  Assuming that the enumeration of certain powers in the charter of a corporation excludes and forbids the exercise of others except so far as incidental and necessary to those granted, and also assuming without deciding that the plaintiff could not engage in the hotel business, there is nothing here to show that the plaintiff was engaged in or carrying on the hotel business, or that the bonds in suit were given to it as a party engaged in or carrying on such business.  They were given to it to secure it for the rent reserved in a lease to other parties, and there is nothing to show that the plaintiff had any interest in the business that was carried on by the lessees.  The most that can be said is that the property was leased for hotel purposes. But that fact did not constitute an engaging in or carrying on the hotel business by it any more than the fact that one lets his premises to tenants engaged in various occupations or for certain business purposes constitutes an engaging in those occupations by him.  Neither did the fact that the plaintiff was to receive as additional rent a certain percentage upon the gross receipts in excess of $70,000 constitute it a partner in the business, or give it such an interest in it, that it could be said to be engaged in the business of carrying on a hotel.  The object of the stipulation was to make the amount of the rent dependent somewhat on the amount of the business done, and not to provide that after the business had reached a certain amount the plaintiff should be interested in it as partner or otherwise.

It is unnecessary to consider whether the evidence that was admitted was rightly or wrongly admitted.  Upon the undis-

puted facts we think that the plaintiff was entitled to recover, and that the findings were right.

*Exceptions overruled.*

*M. O. Adams & K. Adams*, for the defendants.
*R. W. Nason, T. W. Proctor & N. L. Foster*, for the plaintiff.