CITY OF ROCKLAND ET ALS

*vs.*

CAMDEN AND ROCKLAND WATER COMPANY.

Knox.     Opinion, November 5, 1935.

*Z. M. Dwinal*, for complainants.
*Clyde R. Chapman*, Attorney General,
*Alan L. Bird*, for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J.    The record shows that the respondent is the operator of a system of waterworks. Ten persons and corporations, interested only as customers, complained to the Public Utilities Commission for reductions of service rates. After notice, and upon hearing, the complaint was ordered dismissed. The case is brought forward on exceptions to rulings that provisions in the special act under which corporate organization had been formed, restrictive of holding property and declaring dividends, neither restrained nor controlled the rate fixing power of the Commission.

The Camden and Rockland Water Company, though privately owned, is a public utility, as that term is applied to corporations rendering a public service.

The Company antedates, as the Artesian Water Company, to 1880. 1880, P. & S. L., Chap. 212. In 1885, name was changed, and increase of capital stock to $150,000.00 authorized; realty and personalty necessary and convenient might be held equaling capital stock. 1885, P. & S. L., Chap. 522. Further, these sections, among others, were inserted:

"Sect. 8. Said corporation may declare dividends on its capital stock, not exceeding six per cent per annum; if there should be a surplus of receipts or income after paying operating expenses, salaries, repairs and interest on the bonds and notes of the company, said surplus may be applied to reduction of water rates or to extension and alterations of its pipes and appurtenances."

"Sect. 11. Said corporation may issue bonds for construction of its works, upon such rates and time as it may deem expedient, not exceeding the sum of one hundred and fifty thousand dollars and secure the same by mortgage of the franchise and property of said company."

In 1887, capital stock was defined at not exceeding $600,000.00, and additional competency to issue and negotiate mortgage bonds conferred. 1887, P. & S. L., Chap. 9. The next legislation relevant to inquiry was in 1925. Leave was given to bring capital stock, common and preferred, to $1,000,000.00; empowerment to hold real and personal estate to a like sum, then granted, yet remains. 1925, P. & S. L., Chap. 6.

The Public Utilities Commission in an administrative body of limited, though extensive authority, having such powers as are expressly delegated to it by the Legislature, and incidental powers necessary to the full exercise of those so invested. The Commission was created in 1913. 1913, Public Laws, Chap. 129; now contained in R. S. 1930, Chap. 62.

Jurisdiction of the Commission, in the class of cases to which this belongs, is to determine judicially the fair value of the utility property devoted to public service, figure a just return thereon, and establish a rate which shall be reasonable, to apply with substantial equality to all receiving a similar service. In re: *Searsport Water Company*, 118 Me., 382, 108 A., 452; In re: *Guilford Water Company*, 118 Me., 367, 108 A., 446.

"The commission shall fix a reasonable value upon all the property of any public utility . . . whenever it deems a valuation thereof to be necessary for the fixing of fair and reasonable rates . . . ." R. S., *supra*, (Sec. 40).

"The rate . . . shall be reasonable and just, taking into due

consideration the fair value of all its property with a fair return thereon, . . . . " R. S., *supra,* (Sec. 16).

. Such is the fair value concept, better called the rate base.

The Commission found the worth of all property owned by respondent utility being used or required for purposes contemplated by the special charter of incorporation, and refused to lower existing rates.

There is no insistence of error in the valuation as a whole, nor, on this basis, of unfair rates.

It was claimed, in oral argument, by counsel for the complainants, that the common stock of the corporation had been issued without consideration; that it is watered stock, and therefore without significance on present issues. The printed argument is colored by the same contention.

In the hearing before the Commission, complainants called the corporation treasurer to the witness stand. He testified as to preferred stock; also bonds. Then, in replying to a question, he answered:

"How the common stock was subscribed, I cannot testify. I was not here, and I know nothing that would show it."

The upshot of his testimony was that, issuance of the common stock having been before he came with the company, he was not cognizant of details, and was without known source of information.

This testimony did not tend to sustain insistence. The exception crumbles to pieces.

Upon all the evidence, the Commission evalued the property of the utility essential to performance of imposed duty, at a sum greater than the total of capital stock, both common and preferred, plus bonds; and held net revenue on fixed capital within lawful bounds. The specific findings are not now material.

If a corporation holds property, in the face, not of a prohibitory provision declaring the holding void, but of a directory and regulative limitation, title is good until invalidated in a direct proceeding instituted for the purpose. That restrictions upon the amount of property which may be held cannot be taken advantage of collaterally, has been settled by a long line of decisions. Outstanding is *Farrington* v. *Putnam,* 90 Me., 405, 37 A., 652, 667.

There, in difference from the situation here, capacity of a charitable institution, whose holdings already footed up full statute allowance, to take estate devised and bequeathed it, was of concern. The opinion is replete with sense; its clarity is convincing; its analogy compelling. To quote, briefly:

" . . . . the charter is a contract between the corporation and the state in which no person is legally interested but the parties thereto, the same general rules of interpretation applying as in other contracts; that if the corporation fails to keep its side of the contract the state can take advantage of the default or not as it pleases; that the transgression may be so slight in its consequences that the state will forgive the offense, or forgive it because occasioned by some accident or error resulting while the corporation is acting in good faith, or the state may, . . . if the increase be made without authority, may ratify the act afterwards either by some legislative provision or, as may be done between any other contracting parties, by its silence and any other acts indicating consent; . . . policy belongs to the state and not to the court and is an executive and not a judicial right, for the court would decide the question in the case for all cases and all time, while the state may decide the question differently at different times according to its discretion and the public good."

The complainants may not make use of the charter restriction. This conclusion accords with what seems to be the general rule. 14A, C. J., 559; *Farrington* v. *Putnam*, supra; *West Springfield* v. *Aqueduct Co.*, 167 Mass., 128, 44 N. E., 1063; *Nantasket Beach etc., Co.* v. *Shea*, 182 Mass., 147, 65 N. E., 57; *Hubbard* v. *Art Museum*, 194 Mass., 280, 80 N. E., 490; *Rutland, etc., R. Company* v. *Proctor*, 29 Vt., 93; *Goundie* v. *Northampton Water Company*, 7 Pa. St., 233; *Grant* v. *Henry Clay Coal Company*, 80 Pa. St., 208; *Leazure* v. *Hillegas*, 7 Serg. & R. (Pa.), 313; *Barnes* v. *Suddard*, (Ill. 1886) 7 N. E., 477; *Water-Supply & Storage Co.* v. *Tenney*, (Colo. 1897) 51 P., 505; *Hickory Farm Oil Co.* v. *Buffalo, N. Y. & P. R. Co.*, 32 Fed., 22; *Mallett* v. *Simpson*, (N. C.) 55 Am. Rep., 594; *Runyan* v. *Coster*, 14 Pet., 122, 10 Law ed., 382; *Union National Bank* v. *Matthews*, 98 U. S., 621, 628, 25 Law ed.,

188; *National Bank* v. *Whitney*, 103 U. S., 99, 26 Law ed., 443; *Jones* v. *Habersham*, 107 U. S., 174, 27 Law ed., 401; *Reynolds* v. *Bank*, 112 U. S., 405, 28 Law ed., 733; *Fritts* v. *Palmer*, 132 U. S., 282, 33 Law ed., 317; *Kerfoot* v. *Farmers & Merchants Bank*, 218 U. S., 281, 54 Law ed., 1042.

*Exceptions overruled.*