**FIRST HARTFORD CORPORATION**

v.

**CENTRAL MAINE POWER CO. and Maine Public Utilities Commission.**

Supreme Judicial Court of Maine.

Argued March 13, 1980.
Decided Jan. 29, 1981.

Jensen, Baird, Gardner & Henry, George F. Burns (orally), Portland, for plaintiff.

Horace S. Libby, Joseph G. Donahue (orally), Public Utilities Commission, Augusta, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, James G. Good, (orally), Gerald M. Amero, Portland, Seward B. Brewster, Augusta, for defendants.

Before GODFREY, NICHOLS and ROBERTS, JJ., and DUFRESNE, A.R.J.

GODFREY, Justice.

This litigation arose from the shutting down of the Maine Yankee nuclear generating plant for repairs and maintenance from June 29 to October 11, 1974. During that time, Central Maine Power Company, which buys part of its power under a contract with Maine Yankee Atomic Power Company, supplied its own customers with more expensive power from other sources.

On January 28, 1975, acting pursuant to 35 M.R.S.A. § 291 (1978), First Hartford Corporation and nine individuals filed a complaint with the Public Utilities Commission (the Commission) against Central Maine Power Company (CMP).[1] The complainants alleged (1) that the fuel adjustment clauses of CMP, then in the form of paragraphs 18.8 (for industrial users) and 18.9 (for residential and commercial users) of CMP's "Rules and Regulations", were unjust and discriminatory because those clauses were not uniform as applied to all categories of user, (2) that, because of the 1974 shutdown of Maine Yankee, application of such clauses resulted in revenue exceeding that derivable from CMP's applicable approved base rate, (3) that the Commission had no legal authority to permit the utility to apply such clauses, and (4) that, even if such clauses were legal, their application in the circumstances resulted in unreasonable and unjust rates contrary to 35 M.R.S.A. § 51 (1978) and amounted to an unjust practice prohibited by the provisions of what is now the first paragraph of 35 M.R.S.A. § 102 (Supp. 1980–81).[2] The complainants requested the Commission, after investigation and public hearing, to (1) declare the fuel adjustment clauses illegal, (2) stay further application of such clauses, (3) order CMP to reimburse the complainants for all amounts paid under such clauses, and (4) award such other relief as might be necessary to eliminate the alleged unjust and unreasonable rates and practices of CMP.

On the same day, January 28, 1975, the Commission issued a notice of complaint

1. 35 M.R.S.A. § 291 (1978) provides as follows:
     Upon written complaint made against any public utility by 10 persons, firms, corporations or associations aggrieved, that any of the rates, tolls, charges or schedules or any joint rate or rates of any public utility are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act of said public utility is in any respect unreasonable, insufficient or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the commission, being satisfied that the petitioners are responsible and that a hearing is expedient, shall proceed with or without notice to make an investigaton thereof. No order affecting said rates, tolls, charges, schedules, regulations, measurements, practices or acts complained of shall be entered by the commission without a formal public hearing.

2. What is now the first paragraph of section 102 was brought forward unchanged when section 102 was amended in 1979. P.L. 1979, ch. 368. That paragraph provides as follows:
     If any public utility makes or gives any undue or unreasonable preference or advantage to any particular person, firm or corporation or any undue or unreasonable prejudice or disadvantage in any respect whatever, such public utility shall be deemed guilty of unjust discrimination which is prohibited and declared unlawful.

pursuant to 35 M.R.S.A. § 292 (1978). CMP filed its answer a week later, denying the material allegations of the complaint and alleging that CMP's fuel adjustment clauses had been specifically filed with the Commission for many years as required by 35 M.R.S.A. § 61 (1978), and had been approved by the Commission for many years (including 1974) as part of CMP's filed tariffs, as establishing just and reasonable rates under 35 M.R.S.A. § 51 (1978).

On January 15, 1976, CMP filed with the Commission a Rule 12(c) motion, later amended, for a decision on the pleadings and for dismissal of the complaint.[3] CMP sought dismissal on the grounds that the complaint failed to state a claim on which relief could be granted and that the Commission lacked subject-matter jurisdiction. CMP asserted (1) that the proceeding had become moot because the fuel adjustment clauses complained of were no longer in effect, paragraphs 18.8 and 18.9 having been superseded by new provisions of CMP's "Rules and Regulations"; (2) that the clauses complained of were legal, just, and reasonable as a matter of law; (3) that First Hartford was the only complainant aggrieved by paragraph 18.8 (for industrial users) and therefore the requirement of section 291 that a complaint be filed by "10 persons, firms, corporations, or associations aggrieved" had not been met; and (4) that the Commission had no authority to stay CMP from collecting amounts due or to order CMP to refund any amounts collected pursuant to such rates.

On October 31, 1977, the Commission held a public hearing on CMP's motions. Oral arguments were presented by the parties and briefs were submitted thereafter.

On August 24, 1979, the Commission issued an order dismissing First Hartford's complaint on the grounds that (1) no prospective relief could be granted because the clauses complained of were no longer in effect, and (2) the Commission was without

authority to grant retrospective relief if such relief should be otherwise warranted.

First Hartford filed timely notice of appeal pursuant to 35 M.R.S.A. § 303 and three days later, on September 24, 1979, filed a complaint with the Law Court pursuant to 35 M.R.S.A. § 305. By order, the Law Court consolidated the section 303 appeal and the section 305 complaint and directed that the action proceed on a single record. Both CMP and the Commission answered the section 305 complaint and moved to dismiss for failure to state a claim on which relief could be granted. CMP moved to dismiss on the ground, also, that the Law Court is without subject-matter jurisdiction.

We affirm the Commission's order of August 24, 1979, dismissing the section 291 complaint; we dismiss First Hartford's section 305 complaint for failure to state a claim cognizable by the Law Court under section 305.

## I. *The Section 303 Appeal*

### A. *Prospective Relief*

■ The Commission was correct in determining that there was no prospective relief it could grant the complainants. The rate schedules complained of, paragraphs 18.8 and 18.9 of CMP's "Rules and Regulations" in effect when the complainants began this proceeding, are no longer in effect, and CMP's fuel adjustment clauses now provide for a single uniform rate for all classes of customers. Since 1975, fuel adjustment clauses have been expressly authorized by legislation. Chapter 489 of the Public Laws of 1975, effective October 1, 1975, enacted section 131 of title 35 M.R.S.A., establishing "a general methodology for effectuating adjustments regarding the fuel component involved in the rates of electric utilities on a standardized basis." *Central Maine Power Co. v. Public Util.*

---

**3.** CMP's motion before the Commission for judgment on the pleadings pursuant to Rule 12(c) of the Maine Rules of Civil Procedure was authorized by 35 M.R.S.A. § 308 (1978). There is no merit to First Hartford's contention that

by issuing its notice of complaint pursuant to 35 M.R.S.A. §§ 292 and 293, the Commission was thereafter barred from granting a motion by the utility to dismiss under Rule 12(c).

*Comm'n.*, Me., 414 A.2d 1217, 1226 (1980). The system established by the 1975 statute was extensively revised by chapter 689 of the Public Laws of 1977, effective July 6, 1978, continuing the recognition of fuel adjustment clauses as lawful and continuing the requirement that fuel cost adjustments made under section 131 are to be billed or credited at a single uniform rate for all customers of the utility.[4]

The original complaint alleged that CMP's fuel adjustment clauses unlawfully allowed CMP to recover certain charges attributed by CMP to the 1974 shutdown of Maine Yankee. In paragraph 8 of the complaint, the complainants alleged that CMP's 1974 fuel adjustment clauses and the imposition of charges by virtue of their operation were illegal, unjust, and unreasonable because (1) the Commission had no legal authority to permit such clauses, or (2) even if legal, the clauses "as utilized under the circumstances described in this complaint" constituted an unreasonable and unjust rate, 35 M.R.S.A. § 51, and an unjust practice, 35 M.R.S.A. § 102. The "circumstances described in this complaint" were alleged to be that the differing treatment of customer classes produced unjust and discriminatory charges and that CMP's use of its fuel adjustment clauses resulted in substantial charges over and above CMP's base rate.

However, all customer classes are now treated uniformly, all charges attributed by CMP to the 1974 shutdown of Maine Yankee have been long since included in tariffs filed by CMP and approved by the Commission for collection, and CMP's current fuel cost rate adjustments no longer reflect any charges attributable to that shutdown. CMP's method of handling fuel adjustment charges is now governed by section 131.[5] Therefore, even if it were to be assumed, as

First Hartford contends, that the application by CMP in 1974–1975 of its former fuel adjustment clauses was beyond the authority of the Commission to authorize and therefore illegal, and that the Maine Yankee shutdown produced collections by CMP through application of those clauses in excess of CMP's applicable base rate with a resulting unreasonable or unjust rate or unjust practice, there could be no relief of a prospective nature. A declaration that such clauses had been illegal or an injunction against their future application would accomplish nothing.

## B. *Retrospective Relief*

■ The fuel adjustment clauses complained of and their predecessors for at least fifteen years had been approved by orders of the Commission in advance of their application by CMP in its billing of customers. *See, e. g., Central Maine Power Co., Re: Revision of Fuel and Purchased Energy Adjustment Clause*, Public Util. Comm'n Docket No. U 3022 (Feb. 1, 1974). The clauses were thus filed and approved as an element of CMP's tariff, as a part of the ratemaking process. Whether or not the clauses were "just, reasonable and otherwise lawful", as the Commission's orders recited, they functioned as rates, filed and approved in advance of their inclusion in customers' charges.

With respect to utilities other than carriers of freight, the Maine system of utility rate regulation is so designed that the Commission's authority to protect ratepayers from unjust or unreasonable rates is prospective and preventive in nature. *Central Maine Power Co. v. Public Util. Comm'n*, Me., 414 A.2d 1217 (1980); *New England Tel. & Tel. Co. v. Public Util. Comm'n*, Me.,

4. Section 2 of chapter 689 of P.L. 1977 contained a transition provision authorizing each utility to continue billing a fuel charge as authorized by P.L. 1975, ch. 489, until the effective date of its next general rate adjustment under section 64 or 296 of title 35 following the effective date of regulations promulgated pursuant to the new (1978) section 131. At the time the instant appeal was argued orally, CMP was making fuel rate adjustments on the basis

of the old section 131, as enacted by P.L. 1975, ch. 489, since the Commission had not completed the process of implementing the new fuel adjustment scheme provided for by P.L. 1977, ch. 689, in its application to CMP. *See Central Maine Power Co. v. Public Util. Comm'n*, Me., 414 A.2d 1217, 1225 n. 6.

5. See note 4 *supra*.

354 A.2d 753 (1976). In *New England Tel. & Tel. Co. v. Public Util. Comm'n, supra,* the utility argued that the Commission's failure to grant interim relief pending the Commission's suspension and investigation of the utility's newly filed rates should have been corrected by the Commission's affording a retrospective remedy for the loss, resulting from regulatory lag, of increased revenues. We held that, in contrast to the Commission's express authority under 35 M.R.S.A. § 70 to afford an after-the-fact remedy to ratepayers of utilities engaged in the transportation of freight,[6] the Legislature has not given the Commission power to afford such a remedy to ratepayers of other kinds of utilities. We noted one minor exception to that lack of remedial power, namely, the provision of 35 M.R.S.A. § 298 permitting the Commission to authorize "reparation or adjustment" under certain conditions when a utility admits that a rate charged was excessive or unreasonable or collected through error.[7]

Again, in a later case by the same name, *New England Tel. & Tel. Co. v. Public Util. Comm'n,* Me., 362 A.2d 741 (1976), this

Court held that the Commission had neither express nor implied authority to permit a utility not engaged in the transportation of freight to have a rate subject to refund or surcharge. In particular, we rejected the proposition that section 294 of title 35 conferred authority to attach refund or surcharge provisions to New England Telephone's rate schedules.[8] *Id.* at 753–56.

It is a direct and necessary inference from the two cited *New England Telephone* cases that at the time complainants filed their section 291 complaint, the Commission had no authority to review CMP's rates and order refunds from charges collected by CMP.[9] However, beginning in 1975, the Legislature has enacted certain amendments to the public utilities law that First Hartford contends render the cited *New England Telephone* cases no longer controlling with respect to the power of the Commission to order refunds if the facts alleged in the complaint are true. For two reasons that contention must be rejected. First, for the purpose of evaluating the sufficiency of the section 291 complaint, if the Commis-

**6.** 35 M.R.S.A. § 70 (1978) provides, in pertinent part, as follows:

... The commission, by proper order, may require the common carrier which has filed any such increased rate, joint rate, toll, fare, rental or charge affecting the transportation of freight to refund, in such manner and under such conditions as may be prescribed by the Commission, to all persons from whom charges have been collected by virtue of the schedules under investigation, any and all sums collected in excess of the rate, joint rate, toll, fare, rental or charge affecting the transportation of freight so determined and fixed by the commission as being the maximum rate, joint rate, toll, fare, rental or charge to be collected, and may require due report of the refund so made ....

**7.** The provision in question is the second sentence of 35 M.R.S.A. § 298, which reads as follows:

The commission may authorize reparation or adjustment where the utility admits that a rate charged was excessive or unreasonable or collected through error, and where it further appears that the utility, within 90 days, or in the case of railroads 6 months after the rendering of any service within the State under such rate, has filed a reduced rate in place of the rate which admittedly was exces-

sive or unreasonable or collected through error.

**8.** The second sentence of section 294 provides as follows:

If upon such public hearing it shall be found that any regulation, measurement, practice, act or service complained of is unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of chapters 1 to 17 or if it is found that any service is inadequate or that any reasonable service cannot be obtained, the commission shall have power to establish and substitute therefor such other regulations, measurements, practice, service or acts, and to make such order respecting and such changes in such regulations, measurements, practice, service and acts as shall be just and reasonable.

**9.** First Hartford argues that our ruling in the second *New England Telephone* case (362 A.2d 741), that the Commission lacks the authority to order refunds from charges collected in accordance with rates duly fixed and approved, is no longer dispositive in view of an amendment to 35 M.R.S.A. § 313 made by P.L. 1979, ch. 361, effective September 14, 1979. We reject that argument for reasons set forth in text below at notecalls 11 and 12.

sion lacked power to revise CMP's rates and order refunds to customers of CMP in January, 1975, when complainants began their proceeding, that power cannot be supplied retroactively by the passage of subsequent legislation. Second, even if the subsequent legislation could be taken into account in determining whether the section 291 complaint was open to a Rule 12(c) motion to dismiss, the net effect of that legislation has not been, as appellant contends, to empower the Commission to order after-the-fact revision of rates with consequent reparations—either to the utility or its ratepayers. *Central Maine Power Co. v. Public Util. Comm'n*, Me., 414 A.2d 1217 (1980).

The subsequent statutory changes that appellant relies on may be summarized as follows: Effective October 1, 1975, chapter 489 of P.L. 1975 enacted 35 M.R.S.A. § 131, section 1 of which provided as follows:

> 1. Billing. The cost of any and all fuel used by an electric utility in generating or supplying electricity to a customer shall be included in the itemized fuel charge and shall be billed at a single uniform rate per kilowatt-hour used by a customer. Such fuel charge shall be the fuel rate multiplied by the number of kilowatt-hours used by a customer. The fuel rate shall be uniform for all customers of any electric company, and that rate shall be calculated by dividing the total cost of fuel used in generating or supplying electricity which is applicable to a billing period by the total number of kilowatt-hours used by all customers.

We construed that provision in *Central Maine Power Co. v. Public Util. Comm'n, supra,* holding that the provision does not express a mandate that ratepayers must pay to an electric utility, as a cost of service, the utility's actual costs for fuel used to generate or supply electricity. We expressed our view of section 131 as follows (*id.* at 1226):

> [I]t aims to maintain justness and reasonableness in the rates of electric utilities in the face of the fact that fuel expenses are a major item of their costs and that the expenses of fuel tend to be

fluctuating. To achieve this objective, Section 131 sets up a general methodology for effectuating adjustments regarding the fuel component involved in the rates of electric utilities on a standardized basis and thereby avoids the need of the frequent Commission hearings and proceedings that would otherwise be necessary. In this methodology is embodied a formula which yields a *fuel rate* as to a current billing period, and it is on the basis of this fuel rate that the fuel charge is made to an individual ratepayer in such current billing period.

By thus characterizing the function of Section 131, we make plain that we have concluded that Section 131 does not give rise to a "cost of service" tariff, so-called, entitling electric utilities to recover their *actual* past fuel expenses dollar for dollar by deferred billing. Rather, Section 131 prescribes a methodology by which on a standardized basis a fuel *rate is fixed* for a *current* billing period by projection from the experience of a *past* period, as a test period, of fuel expenditures. The rate thus fixed is deemed just and reasonable as constituting a reasonable enough projection of the fuel expenditures for the *current billing period.*

We concluded,

> [T]he fuel adjustment provision in Section 131 is a general formula to permit the effectuation, on a fundamentally routine basis, of a just and reasonable rate fixed for a current billing period by resort to a "test" past period of fuel expenditures, and that it is not a mechanism through which electric utilities are enabled to recover, dollar-for-dollar as a cost of service, their *actual* expenses for fuel.

*Id.* at 1228.

Subsection 3 of section 131 as enacted by P.L. 1975, ch. 489, provided, in part, as follows:

> 3. *Reports.* The commission shall require electric companies to file monthly reports of fuel cost, purchased power charges, kilowatt-hour usages and income derived from fuel charges. The commis-

sion shall examine such reports from time to time and shall order rebates to customers if the total fuel charges billed to customers exceeds the amount required by companies to pay the cost of fuel and purchased power ....

The second section of the session law itself (P.L. 1975, ch. 489) provided as follows:

Sec. 2. *Investigation.*

[The Commission] shall investigate and examine the appropriateness of all fuel charges imposed by electric companies after January 1, 1973. The commission shall report the results of such investigation to the Legislature ... and shall order rebates to customers if the fuel charges billed between January 1, 1973 and [October 1, 1975] were not in accordance with the provisions of this Act.

Still on our assumption, *arguendo*, that later statutes may be given application in the present case: if section 131 as enacted by P.L. 1975, ch. 489, had remained in effect, we would be faced with the question whether the apparent mandate to the Commission, contained in subsection 3 of section 131 and in the second section of the session law enacting it, to "order rebates to customers" was actually intended to authorize some limited form of retroactive ratemaking in favor of ratepayers, as a unique anomaly in the Maine system for the regulation of utilities other than carriers of freight. We need not decide that question, for section 131 as enacted in 1975 was repealed and replaced, effective July 6, 1978, by a new section 131, which includes no references to "rebates to customers" but contains the following provision:

6. *Calculation and billing of fuel adjustment.* Within 120 days following the effective date of this section, the commission shall establish rules and regulations for the calculation and billing of fuel cost adjustments. The rules and regulations shall include, but shall not be limited to:

.     .     .     .     .

E. An appropriate method to credit customers for fuel cost overcharges

.     .     .     .     .

The commission may, in its discretion, establish a fuel adjustment rate for a fuel computation period based on projected kilowatt-hour sales and fuel costs for that period, and make appropriate adjustments for overcharges or undercharges in customer bills in subsequent computation periods to account for the difference between the projected kilowatt-hour sales and fuel costs and actual kilowatt-hour sales and reasonable fuel costs.[10]

The 1978 statute makes clear what P.L. 1975, ch. 489, may have created some doubt about; namely, that fuel cost adjustments are to be handled, in the first instance, by prospective ratemaking and that fuel rates are to be settled on in advance of billing; if the resulting charges to customers prove in the event to have been either excessive or inadequate, the Commission may, in its discretion, make appropriate adjustments for overcharges or undercharges in customers' bills in subsequent computation periods. The discretion thus vested in the Commission is confined to the special situation addressed by the provisions of the statute as part of the legislative effort to resolve one of the problems created by rapidly fluctuating fuel costs. It cannot be inferred from the enactment of that statute that other provisions of the public utilities law in 1975 gave the Commission the power—let alone the duty—to order rebates to customers if the application of CMP's former fuel rates should result in excessive charges.

Appellant also contends that two amendments of section 313 of title 35, one made in 1977 and the other in 1979, have indicated a legislative understanding that the Commission has authority to modify fuel cost adjustment rates after the fact and order refunds to ratepayers. The first of those amendments was chapter 411 of P.L. 1977, effective October 24, 1977, in effect amending section 313 to provide, in part:

The provisions of chapters 1 to 17 shall be interpreted and construed liberally in order to accomplish the purposes therein.

10. P.L. 1977, ch. 689, § 1, effective July 6, 1978.

The commission shall have all implied and inherent powers pursuant to chapters 1 to 17 which are necessary and proper to faithfully execute its express powers and functions specified in chapters 1 to 17

. . . .

Appellant argues that one effect of this amendment is to render inapplicable to the present case our ruling in *New England Tel. & Tel. Co. v. Public Util. Comm'n*, Me., 362 A.2d 741, 753–56 (1976), that the powers of the Commission set forth in section 294 do not include the power, after a rate has been duly ordered and charges have been collected under it, to revise the rate and order refunds or surcharges.[11] We have long recognized that the Commission has such incidental powers as are necessary for the full exercise of powers expressly delegated to it by the Legislature. *Central Maine Power Co. v. Maine Public Util. Comm'n*, Me., 395 A.2d 414, 424 (1978); *City of Rockland v. Camden & Rockland Water Co.*, 134 Me. 95, 97, 181 A. 818, 819 (1935). However, by 1977, it had been well settled as a cardinal principle of the Maine legislation governing ratemaking for non-carriers of freight, that the Commission had no express, implied, or incidental power to revise rates retroactively. It cannot have been the legislative purpose in 1977, by using the broad, general language of the quoted amendment of section 313, to reverse so basic and pervasive a principle of the Maine system of utility regulation. To recur to the first sentence of the 1977 amendment: retroactive ratemaking is *not* one of "the purposes" of the provisions of chapters 1 to 17 of title 35.

Nothing to the contrary appears in an amendment to section 313, made two years later by P.L. 1979, ch. 361, effective September 14, 1979.[12] In effect, the Legislature amended the second sentence of section 313, quoted above, by adding the following provision:

... including the power to order reparation or adjustment when it finds that an amount charged to or collected from a customer was not in accordance with the filed rate applicable to him or was based upon error.

There is no suggestion in that language that the Commission was thereby empowered generally to revise filed rates or order the refunding of amounts collected in accordance with filed rates. In fact, taken in its entirety, the 1979 amendment assumes that the filed rate is settled and that the correctness of the customer's bill is to be determined on the basis of that filed rate. The 1979 amendment to section 313 is not designed to make the Commission a forum for challenge by ratepayers to approved rates, with respect to either their justness or reasonableness or correctness of computation. The time for challenging a fuel adjustment rate is before the rate is approved by the Commission. *See* subsection 7 of 35 M.R.S.A. § 131 (1980–81 Supp.).

## II. *The Section 305 Complaint*

■ On a section 305 complaint, the Law Court's jurisdiction to review an order of the Commission is limited to cases in which the "justness or reasonableness of a rate, toll or charge" by a utility or the constitutionality of a commission ruling or order is in issue.[13] In the instant case, First Hartford has not alleged that the Commission's order of August 24, 1979, dismissing the

---

**11.** Except for freight rates of common carriers. *See* n. 6 *supra.*

**12.** As amended by P.L. 1979, ch. 361, section 313 continues as follows:

The customer shall attempt to settle any dispute concerning the alleged overcharge or billing error at an informal hearing with the utility company prior to filing a complaint with the commission .... The commission shall not order a rebate for a billing error or excessive charge that antedates the order by more than 6 years ....

**13.** 35 M.R.S.A. § 305 provides, in pertinent part, as follows:

Notwithstanding sections 303 and 304, in all cases in which the justness or reasonableness of a rate, toll or charge by any public utility or the constitutionality of any ruling or order of the commission is in issue, the law court shall have jurisdiction upon a complaint to review, modify, amend or annul any ruling or order of the commission, but only to the extent of the unlawfulness of such ruling or order.

section 291 complaint, was confiscatory or otherwise unconstitutional. With respect to the allegations in First Hartford's complaint that CMP's fuel charges were unjust and unreasonable, the authority of the Law Court under section 305 to review, modify, amend or annul a Commission order is confined to the extent of the unlawfulness of the order. We have found, on the section 303 appeal, that the Commission was correct in concluding that it could give the complainants no prospective relief and that it did not have authority to order refunds for amounts charged under CMP's former fuel adjustment clauses. Hence the Commission's order dismissing the section 291 complaint was not unlawful.

Since the Commission's order was neither unconstitutional nor unlawful, First Hartford's complaint must be dismissed for failure to state a claim cognizable by the Law Court under section 305.

The entry is:

Section 303 appeal denied; Commission order of August 24, 1979, affirmed.

Section 305 complaint dismissed.

All concurring.